**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

POURYA MALEK,

       Plaintiff,

v.

JEFFERY GREEN, et al.,

       Defendants.

Case No. 17-cv-00263-BLF

**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[Re: ECF 15]

On the evening of February 4, 2016, Plaintiff Pourya Malek ("Malek") was arrested at his home without a warrant on charges of unlawful possession of firearms. He was handcuffed for nine hours and his home was searched both before and after the officers obtained a search warrant. The officers seized his firearms. Malek was jailed in the early morning, released by about 1:00 p.m., and by the end of the day all charges against him were dropped and his guns were returned to him. It turned out that Malek's name was wrongly included on the California Department of Justice's Prohibited Persons Report ("PPR") which formed the basis of his arrest. He now sues the officers involved for damages under 42 U.S.C. § 1983 and related state law claims.

Defendants Special Agent Jeffery Green ("Green"), Special Agent Elisardo Favela ("Favela"), and Special Agent Supervisor Lance Sandri ("Sandri") (collectively the "Officers") move to dismiss several of Malek's claims on the grounds of qualified immunity and various state law immunities. ECF 15 ("Mot.") The Court heard oral argument on the Officers' motion to dismiss on August 31, 2017. Having reviewed the briefing and oral argument of the parties, as well as the governing law, the Court GRANTS IN PART WITH LEAVE TO AMEND and DENIES IN PART the Officers' motion to dismiss.

## I. BACKGROUND

The following facts are alleged in the Complaint and are taken as true for the purposes of a motion to dismiss. ECF 1 ("Compl."). The Complaint also contains additional allegations that the Court finds to be legal conclusions, and those allegations are therefore not set forth in this summary of the factual background. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### A. The Lead Up to the Incident

On October 22, 2012, Malek pleaded no contest to a misdemeanor charge for brandishing a replica firearm in violation of California Penal Code § 417.4, in the California Superior Court for Santa Clara County. Compl. ¶ 16. Malek complied with the Superior Court's order of two years of probation, 30 days in the Weekend Work Program, and payment of a fine. *Id*. On April 21, 2014, the Superior Court granted Malek's motion to terminate his probation and to withdraw the no-contest plea, dismissing the charges against him. *Id*. Malek has no other criminal history. *Id*.

At all relevant times, Officers Green, Favela, and Sandri were employed as law enforcement officers by the California Department of Justice acting within the course and scope of their employment. *Id*. ¶¶ 4-6. On February 4, 2016, the Officers reviewed a Prohibited Person Report ("PPR") in the California Department of Justice-Bureau of Firearms Armed Prohibited Person System ("APPS"). *Id*. ¶ 18. The PPR at issue had been generated on November 12, 2015. *Id*. Pourya Malek's name appeared on the PPR, and the report stated that Malek had been convicted of California Penal Code § 417.4 (Brandishing Replica Firearm). *Id*. ¶ 19. Malek should not have been listed in the PPR, because no California Penal Code statute prohibits a person convicted of § 417.4 from possessing or owning firearms. *Id*. The Officers learned from the PPR that Malek possessed seven firearms. *Id*. ¶ 20. Malek alleges that the Officers "failed to read" or "know" that California Penal Code § 29805 does not include § 417.4 as a predicate misdemeanor offense that would prevent Malek from possessing or owning firearms. Compl. ¶ 22.

On the same day that they reviewed the PPR, the Officers drove to Malek's home and arrived at 9:00 p.m. *Id*. ¶ 23. The Officers knocked on Malek's door and asked him if his name was Pourya Malek. *Id*. ¶ 24. Malek confirmed that he was Pourya Malek. *Id*. The Officers then informed Malek that they were wearing body cameras and that everything would be recorded. *Id*.

The Officers then asked Malek if he owned any firearms, to which Malek responded that he did. *Id*. Officer Green then told Malek that "according to the documents" in Green's possession, Malek was prohibited from owning firearms as the result of a conviction in 2012. *Id*. Malek responded that the Officers were mistaken. *Id*. One or more of the Officers then told Malek that he needed to give the Officers his firearms. *Id*. ¶ 25. Malek responded that he had done nothing wrong and asked if the Officers had a warrant. *Id*. One or more of the Officers then told Malek that he could give up his firearms voluntarily, in which case he would not go to jail, or Malek could wait for them to obtain a search warrant. *Id*. At some point, one or more of the Officers stated that if Malek did not voluntarily give up his firearms, he would be arrested and taken to jail. *Id*.

**B.      The Officers Arrest and Handcuff Malek**

After this initial exchange with the Officers, Malek "closed the door slightly," and stated that he wanted to speak to an attorney and demanded to see a search warrant. *Id*. ¶ 26. At that point, the Officers "barged into" Malek's home, placed him under arrest and handcuffed him behind his back without reading his *Miranda* rights. *Id*. ¶ 27.

Malek alleges that the Officers then searched his house, including going into the garage to take photographs of Malek's vehicles. *Id*. ¶ 28. Malek asked why the Officers were searching his home without a search warrant, and the Officers replied they did not need a search warrant. *Id*. The Officers continued to ask Malek to surrender his firearms voluntarily, and informed Malek that obtaining a warrant would take several hours. *Id*. ¶ 29. Malek stated he would surrender his firearms if a search warrant was obtained. *Id*. Malek's wife was present during the incident, and the Officers did not permit her to move about the house unaccompanied. *Id*. ¶ 30. In addition, the Officers kept the front door of the house open, which made the house cold and attracted the attention of neighbors. *Id*. ¶ 31. The Officers did not permit Malek to put on warm clothes or turn on the heat in the house. *Id*. Malek complained to the Officers of "significant pain from the handcuffs, including by aggravating a pre-existing back injury." *Id*.

Malek alleges that "[a]fter thoroughly searching" Malek's home, "at some point before 3:54 A.M." on February 5, 2016, Officer Green left the house to procure a search warrant in order

to search Malek's home and seize his firearms. *Id*. ¶ 32.

### C. Officer Green Departs Malek's Home to Obtain a Search Warrant

Officer Green made a statement of probable cause in support of an application for a search warrant that stated "[d]ue to the misdemeanor conviction, of 417.4 PC, MALEK is prohibited from owning or possessing firearms for a ten year period after the conviction date (through 10/23/2022) per section 29805 PC (Possession of Firearm by misdemeanant), a felony violation." *Id*. ¶ 33. Malek alleges that California Penal Code § 29805 does not list § 417.4 as a predicate offense. *Id*. ¶ 17. As such, Malek should not have been listed on the PPR and was not prohibited from owning or possessing firearms in violation of § 29805. *Id*. ¶ 19. Malek further alleges that the Officers "fail[ed] to know" that § 29805 does not include § 417.4 as a predicate misdemeanor offense, because the Officers "failed to read" § 29805. *Id*. ¶ 22.

In addition to issues with Officer Green's statement of probable cause, Malek alleges the search warrant was defective because it failed to limit the search and seizure to the seven firearms identified on the PPR. *Id*. ¶ 34. The search warrant sought permission to search and seize a wide variety of firearms and firearm related items. *Id*. ¶ 35. Moreover, the search warrant sought a wide range of non-firearm related personal property such as personally identifying documents, electronic devices, cell phones, computers, and any items associated with criminal activity such as possession or sales of controlled substances. *Id*.

When Officer Green procured the search warrant, he called Officer Sandri to inform him that the search warrant had been obtained. *Id*. ¶ 36. Back at the house, Officer Sandri then told Malek a search warrant had been obtained and told Malek to open the gun safe otherwise a locksmith would come drill it open. *Id*. Malek remained handcuffed, but instructed his wife to open the gun safe. *Id*. Officers Favela and Sandri seized the guns and ammunition in the safe as well as several knives on display near the gun safe. *Id*. At some point after opening the gun safe, Officer Green returned to the house and showed the search warrant to Malek. *Id*. One or more of the Officers also searched the house after opening the gun safe and took photographs. *Id*.

### D. The Officers Take Malek to Jail and Eventually Discover the PPR Error

By 6:00 a.m. on February 5, 2016, Malek had been in handcuffs for approximately nine

hours. *Id.* ¶ 38. The Officers then transported Malek to Santa Clara County jail. *Id.* ¶ 39. Prior to leaving, Malek requested that he be allowed to take his prescribed pain medication for his back, but Officer Sandri said no. *Id.* At the Santa Clara County jail, Malek was booked on charges for violations of two felonies: California Penal Code § 29805 and § 30305 (prohibiting possession of ammunition, based on a violation of § 29805). Compl. ¶ 40. Malek remained in custody until 1:00 p.m. on February 5, 2016. *Id.* A few hours later, at 6:00 p.m., Officer Sandri left a voicemail for Malek stating that their "paperwork" was incorrect and that Malek was not prohibited from owning or possessing firearms. *Id.* ¶ 41. The Officers returned the seized firearms and ammunition to Malek at 9:00 p.m. on February 5, 2016. *Id.*

The Complaint asserts five counts against the three Officers: (1) claims pursuant to 42 U.S.C. § 1983 for violations of Malek's Fourth, Second, and First Amendment rights; (2) violation of California Civil Code § 52.1 ("Bane Act"); (3) negligence and personal injuries; (4) assault and battery; and (5) false arrest or imprisonment. *See generally* Compl.[1] Malek seeks compensatory, punitive and statutory damages. *Id.* The Officers filed the instant motion to dismiss on February 22, 2017. ECF 15 ("Mot.").

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar,* 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

---

[1] Although Malek has labeled the counts up to six, there are only five counts listed in the Complaint. Moreover, as discussed below, Malek's sole count pursuant to section 1983 is actually multiple claims that must be addressed separately.

unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

## B.     Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss,* 134 S.Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011)). "[T]he Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). Under the applicable pleading standard, the plaintiff must allege facts sufficient to make out a plausible claim that it would have been clear to the defendant officer that his conduct was unlawful in the situation he confronted. *Id.* at 2067. "Because qualified immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Doe By and Through Doe v. Petaluma City School Dist.,* 54 F.3d

6

1447, 1449–50 (9th Cir. 1995) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court set forth a two-part approach for analyzing qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir.2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Supreme Court has clarified that the *sequence* of analysis set forth in *Saucier* is not mandatory and that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan,* 555 U.S. 223, 241-42 (2009). Thus, in some cases, it may be unnecessary to reach the ultimate constitutional question when officers would be entitled to qualified immunity in any event, a result consistent with longstanding principles of judicial restraint.

The Supreme Court recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Ricard*, 134 S.Ct. 2012, 2023 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly

established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

## III. DISCUSSION

The Complaint alleges five counts against the Officers. However, Malek's first count for a violation of § 1983 is actually comprised of multiple constitutional violations which must be addressed separately. The Court considers the Officers' motion to dismiss various § 1983 claims in the Complaint, and then turns to Malek's claims brought under state law. For the reasons below, the Officers' motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND and DENIED IN PART.

### A. Section 1983 Claims[2]

To state a claim under § 1983, a plaintiff must allege that "(1) the defendants acting under color of state law (2) deprived plaintiff [ ] of rights secured by the Constitution or federal statutes." *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986). As explained above, even if a plaintiff plausibly alleges the deprivation of a constitutional right under color of state law, government officials are protected from liability for civil damages by the doctrine of qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood*, 134 S.Ct. at 2066–67 (quoting *al-Kidd,* 131 S.Ct. at 2080). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73

---

[2] Malek confirms in his opposition that the Complaint only brings claims under § 1983 against the Officers in their individual capacities and does not allege that the Officers are sued in their "official capacities." Opp'n 25. The Officers' motion to dismiss claims against them in their official capacities is therefore DENIED AS MOOT. Mot. 17.

L.Ed.2d 396 (1982)). To survive the Officers' invocation of qualified immunity, the plaintiff must succeed on both prongs. *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012).

The Officers move to dismiss the § 1983 count on the grounds of qualified immunity with respect to (1) probable cause supporting Malek's arrest; (2) the Officers' entry into the home to arrest Malek; (3) the use of handcuffs during Malek's arrest and the duration of his handcuffing; (4) the search and seizure of Malek's property pursuant to a search warrant; and (5) a retaliation claim. *See* Mot. 5. The Court has considered the issues to be decided as characterized by the Officers. The Court notes that the Complaint contains additional factual allegations in support of § 1983 claims that the Officers have not moved to dismiss, including: (1) an unreasonable pre-warrant search of Malek's home; and (2) judicial deception by Officer Green in procuring the search warrant. As such, those claims are not reviewed in this Order. However, it is not clear whether Malek is alleging a § 1983 violation based on the pre-warrant search. In fact, it is not clear from the Complaint how many distinct claims Malek is actually alleging against the Officers encompassed by his single count for violations of § 1983. *See* Compl. ¶¶ 50-55. Any amended complaint should clarify which conduct Malek challenges as distinct constitutional violations.

### i.        Unlawful Arrest and Unlawful Entry to Arrest

In their motion to dismiss, the Officers characterize Malek's § 1983 claim regarding the arrest as two distinct violations: (1) an arrest made without probable cause; and (2) an unlawful entry into Malek's home to arrest him. Mot. 5-11. With respect to the arrest, Malek pleads that the Officers violated his "right to be free from government entry of home and real property without probable cause and a warrant as secured by the Fourth Amendment." Compl. ¶ 51(a). Malek's opposition further suggests that Malek challenges only the Officers' "warrantless home entry without probable cause." Opp'n 5. Thus, it is not clear whether Malek challenges the arrest as a distinct violation from the unlawful entry into his home. The Court separately analyzes these two claims, which implicate distinct Fourth Amendment principles, in response to the Officers' arguments that they are entitled to qualified immunity for both the arrest and the unlawful entry into the home.

For the reasons below, the Officers' motion to dismiss Malek's § 1983 claims based on

Malek's arrest and the Officers' entry into Malek's home to arrest him is GRANTED WITH LEAVE TO AMEND.

### a.    Probable Cause to Arrest

The Officers argue that they are shielded by qualified immunity under either prong of the test with respect to whether the arrest was supported by probable cause because (1) probable cause to arrest is clear from the face of the Complaint; and (2) Malek does not plead facts permitting an inference that the Officers' conduct violated a "clearly established" right. Mot. 5-9. The Court finds that as pled, qualified immunity applies under either prong.

### 1.    The Complaint Does Not Allege an Unreasonable Mistake of Law

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). A seizure is unreasonable under the Fourth Amendment if it is an arrest made without probable cause or a detention short of arrest made without reasonable suspicion. *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 964 (9th Cir.2001); *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Probable cause to arrest exists when, "under the totality of the circumstances known to the arresting officers ... a prudent person would believe the suspect had committed a crime." *Dubner,* 266 F.3d at 966.

The Officers contend that probable cause is alleged on the face of the Complaint, and thus they are shielded under the first prong of qualified immunity. Mot. 5-8. In relevant part to the probable cause analysis, the Complaint alleges that the Officers reviewed a PPR that identified Malek as having been convicted of § 417.4 (Brandishing Replica Firearm) in October 2012 and illegally possessed seven firearms as of November 12, 2015 when the PPR was generated. Compl. ¶¶ 18-20. Malek further alleges that the Officers "fail[ed] to know" that California Penal Code § 29805 does not include § 417.4 among the predicate misdemeanor offenses, and "failed to read" § 29805 to confirm that it does not prohibit a person who has violated § 417.4 from possessing or owning firearms. *Id*. ¶ 22.

The factual scenario alleged by Malek shows that on the same day that they viewed the

PPR, the Officers drove to Malek's house, arriving at 9:00 p.m. *Id.* ¶ 23. The Officers knocked on

Malek's door and questioned him when he opened the door. *Id.* ¶ 24. In response to their

questions, Malek confirmed his name and that he owned firearms. *Id.* The Officers informed

Malek that he was prohibited from owning firearms because of a 2012 conviction. *Id.* Malek told

the Officers they were mistaken. *Id.* Malek further alleges that the Officers told him that he had

"options" in that he could either give up his firearms voluntarily and not go to jail, or he could

wait for the Officers to procure a search warrant and be arrested and go to jail. *Id.* ¶ 25. Malek

then "asserted his constitutional rights" and "closed the door slightly." *Id.* ¶ 26. At that point, the

Officers "barged" into Malek's house without his consent, arrested Malek and handcuffed him

behind his back. *Id.* ¶ 27.

The Court finds that as pled, "under the totality of the circumstances known to the

arresting officers ... a prudent person would believe the suspect had committed a

crime." *Dubner*, 266 F.3d at 966. The Officers had reviewed a California Department of Justice §

29805 PPR that identified someone by Malek's name as being prohibited from possessing firearms

due to a conviction under California Penal Code § 417.4 for brandishing a replica firearm in

October 2012, and that he owned seven firearms as of November 2015. After the Officers

knocked on his door and questioned him, Malek confirmed his name was the name on the PPR

and stated that he owned firearms. The Officers argue, and the Court agrees, that probable cause

to arrest Malek existed at that point.

In response, Malek argues that "[i]t was unreasonable for Defendants to not read the statute

on which they were basing serious Fourth Amendment intrusions." Opp'n 8. He argues that the

Officers' conduct is not excused by a mistake of law. However, the Supreme Court has recently

directed that the Court's inquiry consider the objective reasonableness of a mistake of law. *See*

*Heien v. North Carolina*, 135 S.Ct. 530, 539 (2014). The question is thus whether it was

objectively reasonable for an officer to rely on the PPR to provide an accurate representation of

the law and conclude that Malek's conduct was illegal. In *Heien*, an officer stopped a vehicle

because one of its two brake lights was out, but a court later determined that the law only required

a single working brake light. *Id.* at 534. In other words, the defendant was pulled over despite the

11

fact that his conduct did not actually violate any law. In *Heien*, the defendant was charged with drug possession based on the post-arrest search of his car. The defendant moved to suppress evidence seized from his car on the grounds that the stop and search were invalid under the Fourth Amendment. *Id*. at 535. The Supreme Court held that the officer's mistake about the brake-light law was reasonable, and such a reasonable mistake of law rendered the seizure lawful under the Fourth Amendment. *Id*. at 534.

Malek does not point to allegations in the Complaint indicating that the Officers' reliance on the PPR was objectively unreasonable in this case. Rather, Malek cites to a string of pre-*Heien* cases for the proposition that "[p]robable cause cannot be established by an erroneous understanding of the law." Opp'n 8 (citing *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004)). However, *Beier* involved the officers' reliance on the statement of an ordinary citizen who indicated that the plaintiff was violating a judicial protective order, which turned out to be a mistake. *Id*. The line of cases cited by Malek similarly held that there was no probable cause to arrest or detain an individual based on a mistake of law when no crime was actually committed. However, Malek's recitation of these cases carefully avoids the Supreme Court's recent clarification in *Heien* that the Fourth Amendment tolerates objectively reasonable mistakes of fact *or of law*. 135 S.Ct. at 536 (noting that "reasonable men make mistakes of law, too"). The Ninth Circuit has recognized this change in law. *Dunlap v. Anchorage Police Dep't*, 607 F. App'x 764, 765 (9th Cir. 2015) (unpublished) (remanding case to district court for consideration of whether arrest based on mistake of law was reasonable and therefore lawful under *Heien*); *see also Lea v. Steinbronn*, 671 F. App'x 488, 488 (9th Cir. 2016) (unpublished) (affirming summary judgment for defendants because "[e]ven if the Oregon statute did not criminalize [plaintiff's] conduct, [defendant] is entitled to summary judgment…based on his reasonable belief that it did.")

The Complaint does not plausibly allege that the Officers' mistake of law was unreasonable under *Heien*. Malek alleges that the Officers, who worked for the California Department of Justice, reviewed a PPR generated by other Department of Justice personnel which contained Malek's name and alerted them that Malek illegally possessed firearms. Malek alleges that the Officers failed to read, know, or understand the actual predicate offenses listed in § 29805

which did not include Malek's misdemeanor offense. Although Malek alleges that the PPR was three months old, Malek does not allege any facts indicating that the PPR was untrustworthy due to its age. Malek further argues that the Officers "have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed." Opp'n 9 (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 924 (9th Cir. 2012)). However, without facts to suggest that it was unreasonable for the Officers to rely on the PPR generated by other California Department of Justice personnel, Malek has also not alleged that the Officers violated their duty to conduct further investigation. An officer may rely on the work of another law enforcement officer to establish probable cause. *See United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) ("The accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause.").

Other than conclusory allegations that it was "unreasonable" for the Officers not to read or otherwise know the content of § 29805, the Complaint contains no facts to support an inference that the alleged mistake of law was unreasonable. As detailed by the Supreme Court in *Heien*, "the mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place." 135 S.Ct. at 539. Based on the facts alleged in the Complaint, the Court finds that the only plausible inference is that the Officers had probable cause to arrest Malek for a violation of § 29805 when they confirmed that his identity and gun ownership matched the information in the PPR because their mistake of law was reasonable. However, this is a close call at the motion to dismiss stage and the Court believes Malek may be able to allege facts that would address the unreasonableness of the Officers' conduct, thus the Court will allow expanded factual pleading. In the event Malek successfully alleges facts that the Officers' mistake of law was unreasonable, then the Court would not be able to determine that the Officers had probable cause to arrest Malek as a matter of law.

13

## 2. The Alleged Violation was not Clearly Established

Independent of the constitutional question, the Officers argue that the second prong of qualified immunity shields them from liability for the arrest. Mot. 8-9. As pled, the plausible inference from the Complaint is that the Officers had probable cause to arrest Malek for a violation of § 29805. However, Malek could cure the deficiency on the constitutional issue by pleading facts sufficient to support the inference that the Officers' mistake of law was unreasonable. The Court also considers the Officers' argument under the second prong of qualified immunity that the law was not clearly established under the particular circumstances of this case.

"A court, when deciding whether there has been a violation of a clearly established right for qualified immunity, must strike the proper balance in defining that right." *Dunn*, 621 F.3d at 1200. If the right is defined too generally, it will bear no relationship to the objective legal reasonableness that is the touchstone of the inquiry. *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).

Here, Malek argues that the Fourth Amendment right to be free from arrests without probable cause is clearly established. Opp'n 23. Although Malek correctly cites Fourth Amendment protection at a high level, the Supreme Court has repeatedly admonished courts to consider clearly established law as it relates to the particular circumstances of the case, and must avoid defining it "at a high level of generality." *See White v. Pauly*, 137 S.Ct. at 551-52. Thus, addressing the second prong of the qualified immunity analysis, the question presented by the Officers' motion is whether the law clearly established that a reasonable officer in the alleged circumstances could not rely on a California Department of Justice document identifying an individual as illegally possessing firearms to support probable cause to arrest once the suspect identified himself and confirmed that he owned the firearms. Therefore, the Court must consider the state of the law on February 4, 2016, and whether it would have alerted the Officers in this

case that Malek's arrest was not supported by probable cause and was thus unconstitutional.

Malek has not identified any cases, and the Court has found none, indicating that the right allegedly violated was clearly established. The Ninth Circuit has recently emphasized that this is Malek's burden under the second prong of qualified immunity: "Except in the rare case of an 'obvious' instance of constitutional misconduct (which is not presented here), Plaintiffs must *identify a case* where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment." *Sharp v. County of Orange*, No. 15-56146, 2017 WL 4126947, at *7 (9th Cir. Sept. 19, 2017) (emphasis in original) (quoting *White v. Pauly*, 137 S.Ct. at 552). The preexisting law identified must also be "controlling—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." *Id*. (internal citation and quotation omitted).

Malek relies on *Beier v. City of Lewiston* to defeat qualified immunity. 354 F.3d 1058 (9th Cir. 2004). In *Beier*, a Ninth Circuit decision discussed above, the officers relied on the statement of an ordinary citizen, Susan, to arrest the plaintiff after Susan called the police to report that the plaintiff was violating a restraining order she had in place against him. *Id*. at 1063. The officers "knew nothing about the terms of the order other than what, if anything, Susan told them." *Id*. It turned out that none of the plaintiff's actions were a violation of the protective order. *Id*. at 1067. The Ninth Circuit concluded that the officers lacked probable cause to arrest the plaintiff and that "[a]ny reasonably competent officer would have ascertained the terms of the protection order before arresting Beier for failing to comply with it." *Id*. at 1072. In stark contrast to *Beier*, the instant case does not involve an unsubstantiated legal conclusion by an ordinary citizen that Malek had violated a law. Here, the Complaint alleges that the Officers reviewed an official Prohibited Persons Report, generated by personnel at the California Department of Justice, that contained a mistake but nevertheless indicated to the Officers that Malek possessed seven firearms in violation of § 29805. In *Beier*, the Ninth Circuit clearly differentiated between "legal information obtainable from official channels and legal information obtained from lay citizens." *Id*. at 1070.

The situation in this case is more in line with the cases, cited in *Beier*, where officers were granted qualified immunity for arrests they made based on recalled warrants, even when the

arrestee provided the officers with notice of the recall. *Id.* The Ninth Circuit acknowledged that various appellate courts held that officers in those circumstances reasonably relied on information from official warrant tracking services that later turned out to be inaccurate. *Id.* (collecting cases). Here, the Officers similarly had a Department of Justice issued PPR which was a facially valid document even though it was legally inaccurate. *Beier* confirms that "when there is a conflict between legal information obtainable from official channels and legal information obtained from lay citizens, police officers may reasonably rely upon officially-obtained information." *Id.* Thus, contrary to what Malek argues is clearly established, *Beier* actually indicates that the Officers were entitled to rely on the officially-obtained PPR even when Malek informed them that they were mistaken. Whereas the officers in *Beier* relied on Susan's interpretation of a protective order without ever asking to see it (even though she had a copy in her purse), and they never confirmed the information through any official channels. *Id.* at 1071. In light of these material factual differences to the case at hand, *Beier* does not clearly establish that the Officers here violated the Fourth Amendment.

The other cases Malek relies on fare no better. In fact, Malek does not explicitly argue that other cases are controlling on the second prong of qualified immunity. Instead, he seems to conflate the first prong of qualified immunity with the second prong and cites cases for the proposition that probable cause cannot exist to arrest if the conduct did not constitute a crime. Opp'n 23-24 (citing *United States v. Wallace*, 213 F.3d 1216, 1217 (9th Cir. 2000)). The Court has already discussed the impact of *Heien* on such case law, which is relevant under the first prong of qualified immunity regarding whether a constitutional violation has occurred. 135 S.Ct. at 539. Nevertheless, the Court considers whether *Wallace* or *Heien* demonstrates that the Officers' conduct violated "clearly established" federal law in this case. Neither case comes close.

In *Wallace*, an officer conducted a traffic stop because he mistakenly believed that any tinting of a vehicle's front windows was illegal. 213 F.3d at 1217. The tinting turned out to be illegal but for a different reason than the officer thought. The Ninth Circuit held that the officer had probable cause to stop the car because his belief that the defendant's windows were overly tinted was objectively reasonable. *Id.* In its decision, the Ninth Circuit distinguished the case from

16

cases where the defendant's conduct does not "in any way, shape or form constitute a crime." *Id.* at 1221. These circumstances are not at all what the Officers faced in this case, and *Wallace* would not put any reasonable officer in the alleged circumstances on notice that the particular conduct by these Officers was unlawful. To the extent *Wallace* stands for a general principle of law that probable cause can never exist if a crime was not actually committed, *Heien* calls that authority into question. *Heien* is also factually inapposite under the second prong of qualified immunity, and Malek does not argue otherwise. Rather, he cites to it for the general proposition that the Fourth Amendment tolerates only "objectively reasonable mistakes." Opp'n 24.

Although not explicitly argued, the Court considers that Malek may be invoking *Wallace* and *Heien* to show that the alleged constitutional violation was sufficiently "obvious" such that he does not need to point to a specific case on point to plead around qualified immunity. Indeed, Malek relies on *Hope v. Pelzer* for the legal standard that a requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard." 536 U.S. 730, 739 (2002). Rather than require a case with similar facts, the Supreme Court emphasized in *Hope* that the relevant question is whether the state of the law at the time gave the officers fair warning that their alleged conduct was unconstitutional. *Id.* at 741. More recently, the Supreme Court clarified that although "general statements of law are not inherently incapable of giving fair and clear warning to officers," that unlawfulness must still be "apparent" in light of pre-existing law. *White v. Pauly*, 137 S.Ct. at 552 (internal citations and quotations omitted). Therefore, cases "cast at a high level of generality" do not create clearly established law outside "an obvious case." *Id.* The Ninth Circuit has held that this "obviousness principle"— which it characterizes as "an exception to the specific-case requirement"—is "especially problematic in the Fourth-Amendment context." *Sharp*, 2017 WL 4126947, at *8. The Court finds that even if the Officers' reliance on the PPR was unreasonable, the allegations do not constitute sufficiently "obvious" constitutional misconduct such that Malek need not provide a case directly on point.

Despite the opportunity to do so in his opposition brief and at oral argument, Malek fails to "point to prior case law that articulates a constitutional rule specific enough to alert *these*

[Officers] *in this case* that *their particular conduct* was unlawful." *Sharp*, 2017 WL 4126947, at *7 (emphasis in original). Without precedent that would have alerted the Officers that their conduct was unlawful, or a showing that the alleged constitutional violation was so "obvious" that a specific case on point is not required, qualified immunity applies. As currently pled, the Officers are entitled to qualified immunity as it related to their probable cause to arrest Malek for a violation of § 29805 when they confirmed his identity and gun ownership matched the information in a California Department of Justice issued PPR.

The Officers are entitled to qualified immunity under the facts as pled because clearly established law did not proscribe the Officers' alleged conduct in arresting Malek for a violation of § 29805 in reliance on the Department of Justice PPR once he confirmed his identity and that he owned firearms. Again, it is not clear whether Malek asserts a distinct claim for an unlawful arrest independent from his challenge to the Officers' entry into his home. To the extent Malek alleges two separate claims, the Officers' motion to dismiss Malek's claim for unlawful arrest is GRANTED WITH LEAVE TO AMEND. The Court next considers whether the Officers are shielded by qualified immunity for their warrantless entry into Malek's home.

### b. Whether a Warrant was Required to Enter Malek's Home

Even if the Officers had probable cause, the arrest may violate the Fourth Amendment if their invasion into Malek's home to effect the arrest was unlawful. Malek pleads that the Officers drove to Malek's home, knocked on his door, Malek opened his door and the Officers asked him questions regarding the information in the PPR. When Malek refused to hand over his firearms and "closed the door slightly," the Officers "barged into" Malek's house without a warrant and told him that he was under arrest and handcuffed him. Compl. ¶¶ 24-28, 45. Malek's counsel argued at the hearing that this allegation means that Malek was put under arrest and handcuffed once the Officers were inside the house. ECF 42, 31:15-16. The Court accepts this as a reasonable inference drawn from the Complaint. The Officers argue that they are entitled to qualified immunity for this conduct because their entry of the home was constitutionally permissible, or alternatively, a reasonable officer would not have been on notice that the entry to effect Malek's arrest under the circumstances was unlawful. Given that *Pearson* relaxed the sequence of the

*Saucier* two-prong qualified immunity analysis, the Court considers only the "clearly established" prong on this claim, which is dispositive. 555 U.S. at 236. As pled, qualified immunity applies to the Officers' conduct in these circumstances because the alleged violation of Malek's Fourth Amendment right was not clearly established at the time of the Officers' alleged conduct.

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990). In fact, "searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Martinez,* 406 F.3d 1160, 1163 (9th Cir.2005) (internal quotation marks omitted) (quoting *Payton v. New York,* 445 U.S. 573, 586 (1980)). However, officers can rebut the presumption of reasonableness by showing some exception to the warrant requirement excused them from getting a warrant. *See Fisher v. City of San Jose*, 557 F.3d 1069, 1074-75 (9th Cir. 2009). The Ninth Circuit has recognized that where officers have probable cause to arrest, the "warrantless arrest of a suspect who voluntarily opens the door of his dwelling in response to a noncoercive knock by the police" does not violate the Fourth Amendment. *See United States v. Vaneaton,* 49 F.3d 1423, 1426–27 (9th Cir.1995); *accord United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) (acknowledging that "we have held [in *Vaneaton*] that police may make a warrantless arrest of a suspect who voluntarily opens the door to his residence in response to a knock by the police.") If the police "use no force, threats, or subterfuge, a suspect's decision to open the door exposes him to a public place, and the privacy interests protected by *Payton* are not violated." *Crapser*, 472 F.3d at 1148 (citing *Vaneaton,* 49 F.3d at 1427).

In light of these Fourth Amendment principles, the alleged facts and circumstances of this case certainly present a close call. And if Malek is able to amend his allegations to support the inference that the Officers lacked probable cause to arrest him at all, that might also change the Court's analysis of Malek's claim for the Officers' unlawful entry into the home. However, under the facts as currently pled, Malek has not shown that this particular entry into his home was proscribed by clearly established law at the time of the incident.

Again, Malek defines the right at an exceptionally high level of generality, arguing that the Officers violated his "right to be free from warrantless searches of the home absent exigency."

19

1    Opp'n 24.  This phrasing sounds familiar.  The Supreme Court in *Anderson v. Creighton* criticized

2    the court of appeals for defining the right on the qualified immunity question as "the right to be

3    free from warrantless searches of one's home unless the searching officers have probable cause

4    and there are exigent circumstances," rather than considering the "objective (albeit fact-specific)

5    question whether a reasonable officer could have believed [the officer's] warrantless search to be

6    lawful, in light of clearly established law and the information the searching officers possessed."

7    483 U.S. at 640-641; *see also Dunn*, 621 F.3d at 1200.

8        On the second prong of qualified immunity, Malek would have the Court take the position

9    expressly rejected by the Supreme Court in *Anderson*, rather than undergo a "clearly established"

10   analysis that is particularized to the facts alleged in this case.  The Court will not ignore

11   controlling Supreme Court and Ninth Circuit instructions to consider the right allegedly violated in

12   a "particularized" and more relevant sense such that it bears a relationship to the objective legal

13   reasonableness of the Officers' conduct.  *Dunn*, 621 F.3d at 1200.  The relevant question before

14   the Court is therefore whether it was clearly established on February 4, 2016, that a reasonable

15   officer would understand that after obtaining information in a PPR identifying a person as

16   prohibited from owning firearms and then knocking on that suspect's door, asking him to give up

17   his firearms when he voluntarily responded to their knock, and then entering his home to arrest

18   him when he refused to give up the guns and retreated inside the house was unlawful under the

19   Fourth Amendment.  There is no controlling case that would have alerted the Officers that this

20   alleged conduct was unlawful.  In fact, a reasonable officer could have understood binding

21   Supreme Court and Ninth Circuit precedent to point in the other direction and actually authorize

22   their conduct.

23       Again, Malek bears the burden of presenting to the Court case law showing that clearly

24   established law prohibited the Officers' conduct. *Sharp*, 2017 WL 4126947, at *7 (citing *White v.*

25   *Pauly*, 137 S.Ct. at 552).  Malek identified *Payton v. New York* as clearly establishing that the

26   Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into

27   a suspect's home in order to make a routine felony arrest." 445 U.S. at 576.  Thus, Malek argues

28   *Payton* provided the Officers with "clear and fair warning" that an arrest inside the home is

presumptively unreasonable without a warrant. ECF 42, 11:2-4. *Payton* is not "particularized" to the facts alleged in the Complaint. *See White*, 137 S.Ct. at 552. The facts in *Payton* are so dissimilar from the alleged circumstances that it is not sufficient authority to alert the Officers that their entry into Malek's home was unlawful. In *Payton*, the police "broke through a closed door with crowbars" to enter the suspect's apartment and seize incriminating evidence found inside the apartment in plain view in order to convict the suspect. 445 U.S. at 576-77. Here, the Officers knocked on Malek's door, identified themselves as police, and asked him to confirm his identity and gun ownership and then asked him to give up his firearms voluntarily on the basis that he was prohibited from possessing them. When he refused, they "barged into" his house and arrested him. Malek does not allege any coercive intrusion, and a reasonable officer would not have been on notice that this conduct intruded on the zone of privacy implicated in *Payton*.

The Officers point out that a reasonable officer could actually perceive binding authority to *authorize* the conduct alleged here. In *United States v. Vaneaton*, the police were "armed with ample probable cause" but without a warrant when they knocked on the door to the suspect's motel room. 49 F.3d 1423, 1426-27 (9th Cir. 1995). The suspect voluntarily opened the door, identified himself, and was arrested "just inside the open door" of his motel room. *Id.* 1423. The Ninth Circuit held that so long as the police had probable cause to arrest, the "warrantless arrest of a suspect who voluntarily opens the door of his dwelling in response to a noncoercive knock by the police" does not violate the Fourth Amendment. *Id.* Because *Payton* was aimed to protect an individual's "zone of privacy," the Ninth Circuit held that the bright line rule established by *Payton* does not apply when a suspect "voluntarily expose[s] himself to warrantless arrest" in response to a noncoercive knock by the police. *Vaneaton*, 49 F.3d at 1427. The Officers argue that when Malek freely opened the door to his home in response to a noncoercive knock by police officers and refused to give up his guns, a reasonable police officer could have believed that Malek "voluntarily exposed himself to warrantless arrest." 49 F.3d at 1426.

Malek does not engage with two additional controlling cases cited by the Officers: *United States v. Santana*, 427 U.S. 38 (1976) and *United States v. Botero*, 589 F.2d 430, 432 (9th Cir. 1978). In *Santana*, undercover officers investigating a drug conspiracy were directed to Santana's

home, where they saw her standing in the doorway of her house with a brown paper bag in her hand. 427 U.S. at 40. Santana then "retreated into the vestibule of her house." *Id*. The Supreme Court held that "[w]hile it may be true that under the common law of property the threshold of one's dwelling is 'private,' as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a 'public' place." *Id*. at 42. Moreover, Santana's retreat into her house could not thwart an otherwise proper arrest. *Id*. The Supreme Court thus held in *Santana* that "a suspect may not defeat an arrest which has been set in motion in a public place…by the expedient of escaping to a private place." *Id*. at 43.

Under the stipulated facts in *Botero*, the defendant opened the door in response to the agent's knock at the door to his apartment and was placed under arrest "at that time." 589 F.2d at 432. Because there was no allegation that the agent physically entered Botero's home to arrest him, the warrantless entry into the apartment was not at issue. *Id*. However, the Ninth Circuit reasoned that under *Santana*, "a defendant standing in a doorway cannot divert an arrest by retreating into the house," because the doorway is a "public place." *Id*. Thus, the Ninth Circuit stated that "even if the arresting officers followed Botero into the apartment to arrest him, the entry was proper under *Santana*." *Id*.

Malek does not convincingly distinguish *Vaneaton*, does not engage with *Santana* and *Botero*, and more importantly does not identify any pre-existing authority at the time of the incident that clearly established that the Officers' entry into his home violated the Fourth Amendment. The cases Malek relies on may be relevant to a constitutional inquiry under the first prong of qualified immunity, but they are not sufficient to demonstrate that the Officers' entry into his home violated clearly established law. Opp'n 6-7 citing *Kyllo v. United States*, *Florida v. Jardines*, 569 U.S. 1 (2013), *United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012). These cases actually implicate an issue that neither party explicitly briefed or argued, regarding whether the Officers trespassed onto Malek's curtilage by knocking on Malek's door, or whether their conduct fell within the "knock and talk" exception to the warrant requirement. Malek insinuates that the Officers were not entitled to be outside his door in the first place because they came to his house with the intent to arrest him. However, the Complaint does not allege sufficient facts to

support such an inference.

*Kyllo*, *Jardines* and *Perea-Rey* bear no factual resemblance to the circumstances alleged here. These cases do not involve a knock on the door by police to consensually contact the inhabitant, or even consider the validity of a warrantless arrest. Rather, they dealt with whether an unconstitutional search occurs when an officer gathers evidence on someone's property without consent. *Kyllo* involved the use of a thermal-imaging device aimed at a private home from a public street to detect relative amounts of heat within the home. 533 U.S. at 29. The detective in *Jardines* brought a trained police dog to the defendant's home to conduct a dog-sniff for illegal narcotics around the outside of the defendant's house, and used the dog's "positive alert" for narcotics to obtain a search warrant. 569 U.S. at 4. The Supreme Court held that the officer's conduct amounted to a warrantless search under the Fourth Amendment. *Id*. at 1418. Neither *Jardines* or *Kyllo* involved the "knock and talk" exception to the warrant requirement which permits the police to enter the curtilage of someone's home in order to knock on the door and contact the inhabitants.

The only discussion of a "knock and talk" in the cases offered by Malek was in *Perea-Rey*. There, the Ninth Circuit held that it goes beyond the implied license of a "knock and talk" and constitutes an unconstitutional search for the police to meander around the curtilage of someone's home without warrant. 680 F.3d at 1188-89. Malek does not allege that the Officers did so in this case. In *Perea-Rey*, the Border Patrol agent never knocked on the suspect's front door "to initiate a consensual contact." *Id*. at 1188. Rather, the agent entered the curtilage, bypassed the front door and went straight to the carport "where uninvited visitors would not be expected to appear." *Id*. When he encountered the defendant standing in the carport, the officer identified himself and told the defendant not to move. *Id*. Unlike Malek in this case, "Perea-Rey never had an opportunity to simply ignore a knock on the door to his home by police." *Id*.

The Ninth Circuit explained that its holding in *Perea-Rey* did not eliminate the knock and talk exception to the warrant requirement: "To be clear, it remains permissible for officers to approach a home to contact the inhabitants. The constitutionality of such entries into the curtilage hinges on whether the officer's actions are consistent with an attempt to initiate consensual contact

with the occupants of the home." *Id.* at 1187-88. Here, the Complaint alleges that the Officers drove to Malek's house and immediately knocked on his door to initiate consensual contact with him, presumably to confirm the information on the PPR and to confiscate his guns.

Thus, regardless of whether a constitutional violation occurred when the Officers entered Malek's home and arrested him, such a violation was not clearly established by *Payton*, *Kyllo*, *Jardines* or *Perea-Rey*. In fact, the facts are more closely analogous to *Vaneaton*, *Santana*, and *Botero*. The Officers point out that to the extent any of these cases are inconsistent with each other "such debate is dispositive of the qualified immunity question" because a split in authority renders it "unfair to subject police to money damages for picking the losing side of the controversy." Reply 6 (citing *Pearson v. Callahan*, 555 U.S. 223, 245 (2009). The Court agrees that the law in these circumstances was not clearly established.

Malek argues that the Ninth Circuit "explicitly questioned the validity of *Vaneaton*," in *United States v. Lundin*, 817 F.3d 1151, 1160-61 (9th Cir. 2016). Opp'n 7. First, *Lundin* was handed down on March 22, 2016, more than one month after the incident in this case occurred on February 4, 2016. Therefore, the Court does not consider whether *Lundin* constitutes clearly established law alerting a reasonable officer that his conduct was unlawful. *See Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) ("The relevant inquiry is whether, *at the time of the officers' action*, the state of the law gave the officers fair warning that their conduct was unconstitutional.") (emphasis added); *accord Pearson*, 555 U.S. at 244. The Court finds that *Lundin* actually confirms the qualified immunity analysis above. The Ninth Circuit did not overrule *Vaneaton*, and explicitly held that whether *Vaneaton* remained good law was "a question for another case and another day." 817 F.3d at 1061. The Ninth Circuit's recognition that *Vaneaton* "may be on infirm ground after *Jardines*" signals that the law is unsettled in this area and does not clearly proscribe the conduct alleged in this case. 817 F.3d at 1160.

Ultimately, Malek does not meet his burden to "identify a case where an officer acting under similar circumstances as [the Officers] was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S.Ct. at 552. Malek does not point to any controlling precedent that existed on February 4, 2016, that would have alerted a reasonable officer in these circumstances that a

knock, talk, and arrest of Malek in his home was unlawful when the Officers had probable cause to arrest but no warrant. *Sharp*, 2017 WL 4126947, at *7 ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful.") (emphasis in original). Therefore, the law was not clearly established that the Officers' entry into Malek's home to arrest him was unreasonable under the circumstances pled in the Complaint.

### c.    Exigent Circumstances

The parties also dispute whether exigent circumstances existed such that the Officers were entitled to enter Malek's home without a warrant. In light of the above analysis under the second prong of qualified immunity for the unlawful entry to arrest, the Court finds that the issue of exigent circumstances need not be decided because *Vaneaton*'s "doorway exception" does not require exigent circumstances to be present. The Court recognizes that the Supreme Court held in *Payton v. New York* that "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590. However, as explained above, the Ninth Circuit has explicitly held that "[t]he Fourth Amendment's prohibition on warrantless entry into an individual's home does not apply to arrests made at the doorway, because the doorway is considered a public place." *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 955 (9th Cir. 2000) (citing *United States v. Santana,* 427 U.S. 38 (1976), *United States v. Vaneaton,* 49 F.3d 1423, 1427 (9th Cir.1995)). In *Vaneaton*, the Ninth Circuit stated that "[b]ecause we conclude that Vaneaton's exposure to the police was voluntary, we need not discuss exigent circumstances." 49 F.3d at 1426 n.2. This is because if the suspect voluntarily exposes himself to warrantless arrest, "the presumption created by *Payton* is overcome." *Id*. at 1426.

The Court's qualified immunity analysis above found that clearly established federal law at the time of the incident did not prohibit a reasonable officer under the circumstances from arresting Malek inside his house with probable cause but without a warrant and *without exigent circumstances* when Malek voluntarily answered the Officers' knock at his door. Malek failed to

25

"identify a case where an officer acting under similar circumstances as [the Officers] was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S.Ct. at 552. The Court thus construes the Officers' argument that exigent circumstances also existed to arrest Malek without a warrant as an alternative ground for dismissal. Mot. 6-8. Should an amended complaint allege an unreasonable mistake of law and sufficiently plead around qualified immunity with respect to the issues above, only then would the Court need to consider the Officers' qualified immunity arguments regarding exigent circumstances.

For the foregoing reasons, the Officers' motion to dismiss Malek's § 1983 claim for unlawful arrest and unlawful entry to arrest is GRANTED WITH LEAVE TO AMEND. In granting leave to amend, the Court leaves open the possibility that Malek could conceivably allege further factual allegations to raise a plausible inference that, for example, (1) the Officers' reliance on the PPR was unreasonable; and (2) the Officers' conduct went beyond the scope of a permissible "knock and talk." The Court does not hold any opinion as to whether any such facts would ultimately avoid the application of qualified immunity in this case. For the purposes of this motion to dismiss, the Court determines only that amendment would not necessarily be futile.

### ii. Excessive Force

Malek contends that the Complaint properly pleads an excessive force claim against all three Officers for the "painful, embarrassing, lengthy, and invasive" detention. Opp'n 16. Claims of excessive force in the course of an authorized arrest or detention "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether a particular seizure is reasonable must be "judged from the perspective of a reasonable officer on the scene," *id.* at 396, 109 S.Ct. 1865, and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

As with the unlawful arrest, the Officers argue that they are shielded by qualified immunity under either prong on the excessive force claims. Mot. 11-14. Here, the Court addresses only the

second prong of qualified immunity, which is dispositive. *See Pearson,* 129 555 U.S. at 241–42. The Complaint alleges the following circumstances regarding excessive force: the officers arrested Malek for a firearm related felony and handcuffed him behind his back; Malek was subjected to nine hours of handcuffing while the officers secured and executed a search warrant; Malek informed the officers that the handcuffs caused him "significant pain" including by aggravating a pre-existing back injury; Malek requested that he be able to take his prescribed pain pills for his back due to the painful handcuffing, but Officer Sandri said no.

Malek argues that it would have been clear to a reasonable officer confronted with these circumstances that the alleged use of force was unreasonable. The Officers argue that even if Malek alleges a constitutional violation, it was not clearly established that the alleged use of force was excessive. The Officers point out that the law actually permits police officers to handcuff arrestees, and further allows detention of building occupants incident to a search for an extended period of time even if there is no arrest. Mot. 13 (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). The Ninth Circuit has recently confirmed that under *Summers*, "irrespective of the exigencies of the particular circumstances, officers may categorically detain the occupant of a home while executing a *search warrant* in that home." *Sharp*, 2017 WL 4126947, at *6. The Officers also cite to a number of cases to support their argument that "nine hours of handcuffing during an arrest and search for illegal firearms is constitutionally permissible." Reply 11. As discussed below, Malek is unable to meet his burden to identify a case that would have alerted the Officers that their alleged conduct was unlawful. *See Sharp*, 2017 WL 4126947, at *7 (quoting *White v. Pauly*, 137 S.Ct. at 552).

The Court notes that Malek's opposition focuses on the first prong of qualified immunity, and does not properly address the second prong of qualified immunity with respect to the excessive force claim. Malek argues that "it was clearly established that restraint and handcuffs are a use of force subject to standard Fourth Amendment objective reasonableness." Opp'n 24. While Malek correctly identifies general principles of Fourth Amendment jurisprudence, he ignores the relevant inquiry. Under the second prong of qualified immunity for the excessive force claim, the Court considers whether it was clearly established that a reasonable officer under

27

the circumstances as pled would understand that handcuffing an arrested felon with firearms and restraining him in handcuffs for the time it took to secure and execute a search warrant, even when the arrestee complained of back pain and asked to take pain medication, was an unreasonable use of force. The Court considers the case law Malek presents to determine if the constitutional right in question was "clearly established" in light of preexisting law.

Malek argues that this case is similar to *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003). Opp'n 18. In *Meredith*, the Ninth Circuit held that an Internal Revenue Service ("IRS") agent executing a search warrant in an office building was not entitled to qualified immunity for handcuffing the plaintiff, a resident of the building, during a search. 342 F.3d at 1057. The plaintiff in *Meredith* repeatedly insisted on seeing the search warrant, until the defendant eventually grabbed her, threw her to the ground, twisted her arms and handcuffed her. *Id*. at 1060. Importantly, the plaintiff alleged that the handcuffs caused her pain because they were too tight and she suffered extensive bruising. *Id*. The Ninth Circuit held that it was clearly established that the amount of alleged force used by the IRS agent was excessive, and that a reasonable agent in the position of the IRS agent would have known that such conduct violated the Fourth Amendment. *Id*. at 1061. The Ninth Circuit noted that the plaintiff did not pose a safety risk, made no attempt to leave the property, and was suspected of committing only non-violent offenses. *Id*. Here, the Officers argue that *Meredith* is inapposite because that case involved the investigation of a non-violent tax crime, and there was no reason to believe the resident posed a safety risk. Mot. 11. In contrast, the allegations of the Complaint in this case include that the Officers were investigating a firearm-related felony, Malek confirmed he owned guns, the Officers knew he had previously been convicted of brandishing a replica firearm, and the Officers had probable cause to arrest Malek.

The Court agrees with the Officers that *Meredith* is dissimilar from the alleged facts in this case. *Meredith* therefore does not amount to "clearly established" law that would inform a reasonable officer that handcuffing a suspect during an arrest and search for firearms was unreasonable and thus unconstitutional. The facts in the Complaint, taken as true, allege that the handcuffing lasted only as long as the time it took the officers to obtain and execute a search

warrant. Malek argues that the Officers could have allowed him to remain un-cuffed while they sat guard over him in his living room, or removed his handcuffs in response to his complaints of pain. Opp'n 18. The Officers respond that they are not aware of any precedent establishing that an arrestee whose residence is being searched for firearms should be released from handcuffs if he complaints of back pain. Mot. 14. While the availability of alternatives may be a relevant factor under the first prong of qualified immunity determining whether the conduct was reasonable, it does not inform the Court's inquiry under the second prong. On the second prong of qualified immunity, Malek must "point to prior case law that articulates a constitutional rule specific enough to alert *these* [Officers] *in this case* that *their particular conduct* was unlawful." *Sharp*, 2017 WL 4126927. *Meredith* would not alert the Officers that their specific conduct, or even analogous conduct, was unlawful. Malek points to no controlling precedent that prohibits officers from handcuffing an arrestee who is suspected of committing a firearm related felony, or from keeping the arrestee in handcuffs while waiting for and executing a search warrant to seize firearms that the arrestee confirmed were in the house. Therefore, Malek fails to demonstrate that the Officers' conduct as alleged was "clearly proscribed by established federal law." *Id.*

The Officers also correctly point out in their reply and at the hearing that Malek cannot avail himself of the line of cases, including *Meredith*, that involve allegations of overly-tight handcuffing. *See, e.g., LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force.") While the Ninth Circuit has long recognized that excessively tight handcuffing may constitute a Fourth Amendment violation, the Complaint contains no allegations that the handcuffs were too tight, that the handcuffs hurt or damaged Malek's wrists, or even that they caused any other injury. Rather, Malek alleges that the pain resulted from "aggravating a pre-existing back injury." Compl. ¶ 31. Ninth Circuit precedent establishing that overly tight handcuffing can constitute excessive force is therefore not applicable to the facts as alleged in the Complaint. Malek has not cited, and the Court has not found, any case holding that handcuffing alone, or handcuffing when the suspect alerts the officer to a pre-existing injury, is sufficient to state a claim for excessive force.

An examination of *Wall v. County of Orange*, on which Malek relies, makes clear that case

law on overly tight handcuffing does not clearly establish the alleged constitutional violation in this case. 364 F.3d 1107, 1112 (9th Cir. 2004). In *Wall*, the police were called in response to an altercation between plaintiff and the manager of a car wash. *Id*. at 1109. When the officer arrived and began talking to the car wash owners, the plaintiff approached the officer and was told to "get out of here." *Id*. The plaintiff then agreed to leave and began walking away as the officer instructed. *Id*. According to the plaintiff's allegations, "without warning" the officer then "physically attacked" him from behind, grabbed him by his wrist, twisted his arm, and smashed his face, chest and glasses into the car. *Id*. The handcuffs were allegedly "extremely tight" behind his back, and the plaintiff requested multiple times for the officer to loosen the handcuffs. *Id*. at 1110. The plaintiff sustained nerve damage from the handcuffing incident and was forced to give up his profession as a dentist as the result of the injury. *Id*. On summary judgment, the Ninth Circuit found that the officer was not shielded by qualified immunity either for the arrest, which was unlawful, or for the use of excessive force. *Id*. 1111-12. The officer was found to have violated a clearly established constitutional right to be free of excessive force by "continuing the restraint by handcuffs that hurt and damaged [plaintiff's] wrist." *Id*. 1112. The alleged facts in this case do not implicate this preexisting law on overly tight handcuffing. Unlike the facts of *Wall*, the Complaint does not have *any* allegations whatsoever of an abnormal handcuffing procedure, overly tight handcuffs, injuries caused by the handcuffing, visible manifestations of Malek's pre-existing injury, or even a request by Malek to the Officers to loosen or remove the handcuffs.

Relevant authority would involve whether it is unreasonable for an officer to continue handcuffing once the suspect has complained of pain from a pre-existing injury or has asked to take medication to treat a pre-existing condition. None of the cases Malek relies on involve a similar factual scenario. *Franklin* dealt with the use of handcuffs on a severely disabled person. 31 F.3d at 876-77. *Winterrowd v. Nelson* involved a painful pat-down of a "harmless motorist" and did not involve an arrest or the use of handcuffs. 480 F.3d 1181, 1185 (9th Cir. 2007). The excessive force claim in *Green v. City & Cty. of San Francisco* was premised on "the fact that [plaintiff] was held at gunpoint while she was otherwise restrained." 751 F.3d 1039, 1051 (9th Cir. 2014). As with *Meredith* and the case law on tight handcuffing, these cases do not put a

reasonable officer on notice that handcuffing a suspected felon during an arrest and search for weapons, despite his complaint of back pain and request to take his medication, would be an unreasonable use of force.

This is not to say that the Officers can never be on notice that their conduct violates established law unless Malek comes forward with a case with the *exact* same factual scenario. A plaintiff certainly can plead around the second prong of qualified immunity "even in novel factual situations." *Nelson v. City of Davis*, 685 F.3d 867, 884 (9th Cir. 2012) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). However, the Court does not find that Malek has alleged an "obvious" instance of constitutional misconduct, and none of the preexisting law Malek relies on makes the unlawfulness of the Officers' alleged actions apparent in this case.

Malek does not engage with any of the existing case law cited by the Officers holding that handcuffing a suspect is actually constitutionally permissible, and prolonged detentions lasting several hours can be justified by a search for weapons. *See Shaw v. City of Redondo Beach*, No. cv-05-0481, 2005 WL 6117549, at *7 (C.D. Cal. Aug. 23, 2005) ("[C]ourts have recognized that the use of handcuffs in effecting an arrest is 'standard practice.'"); *see also LaLonde v. County of Riverside,* 204 F.3d 947, 964 (9th Cir.2000) ("Handcuffing an arrestee is standard practice, everywhere.") (Trott, J., concurring in part, dissenting in part); *Muehler v. Mena*, 544 U.S. 93 (2005) (holding that 2-3 hours of detention in handcuffs was reasonable during a search for weapons); *Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 934 (8th Cir. 2016) (holding that the length of the detention "was reasonable given that the search took nearly twelve hours and the government had a legitimate interest in detaining the employees during the search," and applying qualified immunity because "Appellants have shown no precedent demonstrating that these detentions violated these employees' clearly established rights."); *United States v. Stout*, 439 F. App'x 738, 747 (10th Cir. 2011) (finding that "an inherently dangerous situation arises" when a search warrant authorizes a search for weapons, justifying detention and handcuffing during detention); *Unus v. Kane*, 565 F.3d 103, 120 (4th Cir. 2009) (holding that four hours of handcuffing during execution of search warrant for financial documents was reasonable). Malek's failure to address or distinguish any of these cases further demonstrates that the alleged

constitutional question confronting the Officers regarding their use of handcuffs was not "beyond debate." *See Ashcroft v. al-Kidd*, 131 S. Ct. at 2083.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. On Malek's version of the facts, the Court finds that it would not have been clear to a reasonable officer that the force used was unreasonable under the circumstances. In other words, controlling federal law does not "clearly establish" that officers cannot handcuff a suspected felon with a firearm who is under arrest while they wait for a search warrant to be obtained and executed, and cannot continue the restraint when the arrestee complains of a pre-existing back injury. Unlike in the cases on which Malek relies, the Complaint does not allege tight handcuffing, severe injuries to the wrist or otherwise, a request to loosen or release the handcuffs, or any other abusive conduct. Thus, Malek fails to "identify a case" to alert the Officers that their conduct was unlawful, and qualified immunity applies. *See Sharp*, 2017 WL 4126947, at *7 (quoting *White v. Pauly*, 137 S.Ct. at 552).[3]

Because the Court finds that Malek could allege additional facts regarding the nature of his handcuffing and detention, the Officers' motion to dismiss Malek's section 1983 claims for excessive force is GRANTED WITH LEAVE TO AMEND.

### iii. Unlawful Search

The Complaint alleges a violation of section 1983 for the Officers' pre-warrant and post-warrant search of Malek's home, as well as judicial deception by Officer Green in procuring the search warrant. The Officers move to dismiss only claims as to Officers Sandri and Favela for the post-warrant search of the home and their seizure of Malek's firearms and knives pursuant to the warrant. Mot. 14-16; Reply 12. However, the Complaint also contains allegations regarding a pre-warrant search of the home and Officer Green's involvement in procuring and executing the

---

[3] Again, the Court does not reach the constitutional question of whether the Complaint plausibly alleges that the Officers' conduct constituted unreasonable force under *Graham*. Since Malek must prevail on both prongs of qualified immunity, the Court's conclusion that the constitutional right allegedly violated was not clearly established at the time of the challenged conduct is dispositive on the motion to dismiss Malek's excessive force claims.

search warrant.  The Officers do not move to dismiss these claims.

### a.  Pre-Warrant Search

The Complaint alleges that once the Officers entered Malek's home and placed him under arrest, the Officers searched his house, including going into the garage to take photographs of his vehicles. Compl. ¶ 28.  Malek alleges that he asked why the Officers were searching his home without a search warrant, and one or more of the Officers replied they did not need a search warrant. *Id*.  The Complaint also alleges that a "thorough[] search[]" of Malek's home occurred "at some point before 3:54 A.M." Compl. ¶ 32.  Despite these factual allegations, it is not clear whether Malek is challenging the pre-warrant search under § 1983.  The Officers do not move on this claim.  Therefore, the sufficiency of the allegations concerning the pre-warrant search is not before the Court at this time.  As such, the Court does not decide whether the allegations state a plausible claim for an unlawful search or if the alleged conduct was a permissible protective sweep.

### b.  Unlawful Search by Officers Sandri and Favela

The Officers do move to dismiss the section 1983 claims against Officers Sandri and Favela for their execution of the search warrant on the grounds that they reasonably relied on Officer Green and the Superior Court Judge who issued the search warrant. Mot. 14.  The Court agrees that Officers Sandri and Favela are entitled to qualified immunity under the facts alleged.  The Complaint alleges that Officer Green obtained a search warrant and then called Officer Sandri to inform him that a search warrant had been obtained. Compl. ¶ 36.  Officer Sandri then told Malek that they had a search warrant, and Malek "would have to open the gun safe or Defendants would have a locksmith come drill it open." *Id*.  Malek instructed his wife to open the gun safe, and Officers Sandri and Favela then seized Malek's guns and ammunition. *Id*.  Officer Sandri and Favela also seized several knives on display near the gun safe. *Id*.  Officer Green returned "[a]t some point after opening the gun safe and showed Malek the search warrant. *Id*.  Malek then alleges that after opening the gun safe, "one or more of Defendants" went through the house searching and taking photographs. *Id*.

Malek argues that Officers Sandri and Favela may not argue that they reasonably relied on

33

the legality of the search warrant because the search warrant lacked particularity on its face. Opp'n 15. Malek acknowledges that an officer's reliance on a search warrant "must be objectively reasonable." *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1027 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). However, Malek ignores binding Ninth Circuit authority that "[w]hat's reasonable for a particular officer depends on his role in the search." *Id.* Given the division of labor in conducting a search, an officer can either "plan and lead" a search, or he can be a line officer and "help execute it." *Id.* Malek has only plausibly alleged that Officers Sandri and Favela were line officers. Thus, they "are required to do much less" than the leader of a search (in this case, Officer Green). *Id.* at 1028. The Ninth Circuit has held that line officers "do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid." *Id.* (citing *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986).

Here, the Complaint does not include factual allegations to state a plausible claim that Sandri and Favela were leaders of the search or that their reliance on the search warrant was unreasonable. The Complaint alleges only that Sandri and Favela executed the search warrant by confiscating Malek's guns, ammunition, and knives once they heard from Officer Green that a warrant was issued. There are no allegations that Officers Sandri and Favela participated in the procurement of the search warrant, or that they ever even saw or read the search warrant. For these reasons, qualified immunity shields Officers Sandri and Favela from liability for their execution of the search warrant. *Ramirez*, 298 F.3d at 1028 ("Because they were not required to read the warrant, the line officers conducting this search cannot reasonably have been expected to know that it was defective.") Moreover, Malek does not allege that Officers Sandri and Favela's search was impermissibly overbroad. Regardless of the scope of the written warrant, Malek only alleges that the Officers obtained access to the gun safe and seized the guns and ammunition contained inside as well as the knives on open display near the safe. He further alleges on information and belief that they went through the house "searching and taking photographs." Compl. ¶ 36.

Accordingly, the Officers' motion to dismiss the section 1983 claims against Officers

Sandri and Favela based on their execution of the search warrant is GRANTED WITH LEAVE TO AMEND. The Court also finds that this analysis disposes of any section 1983 claim for violation of the Second Amendment, because Officers Sandri and Favela acted reasonably in seizing Malek's firearms pursuant to the warrant, and promptly returning them when the mistake was discovered.

### c. Judicial Deception and Unlawful Search as to Officer Green

The allegations in the Complaint against Officer Green with respect to his procurement of the search warrant and its execution are distinct from those against Officers Sandri and Favela. The Officers do not move to dismiss section 1983 claims against Officer Green related to the search warrant, and they do not address Malek's judicial deception claim against Officer Green in their briefing. Although the hearing on the motion to dismiss involved some oral argument on these claims, the issue is not properly before the Court because the Officers did not move to dismiss these claims against Officer Green.

### iv. Retaliation

Malek contends that the Officers violated section 1983 by interfering with Malek's "right to be free from government retaliation for protected speech in exercise of Constitutional rights, as secured by the First Amendment of the U.S. Constitution." Compl. ¶ 51(e). The Complaint alleges that after Malek requested to see a warrant from the Officers, Malek was faced with "the option to either give up his legally possessed firearms voluntarily or go to jail." *Id*. ¶ 25. Malek argues that he engaged in protected speech by informing the Officers that they were mistaken regarding his right to possess firearms, refusing to give the Officers his lawfully possessed and registered firearms, requesting that the Officers obtain a warrant, closing the door slightly and stating that he wanted to speak to his attorney. *Id*. ¶¶ 24-27. Malek urges the Court to find that these allegations support and inference that when Malek exercised his First Amendment right by asserting his Second and Fourth Amendment rights, the Officers "retaliated" by entering his home without a warrant, arresting him, handcuffing him for nine hours and taking him to jail. Opp'n 20. These allegations do not plausibly allege a retaliation claim.

The parties agree that in order to state a claim for retaliation under the First Amendment, a

plaintiff must show that (1) the defendant's conduct "would chill or silence a person of ordinary firmness from future First Amendment activities," and (2) "the evidence must be sufficient to establish that the officers' desire to chill [plaintiff's] speech was a but-for cause of their conduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1194 (9th Cir. 2014). The Officers argue that Malek's retaliation claim fails to plead facts showing that the officers took any actions because they desired to chill Malek's speech. Mot. 16. In line with the Ninth Circuit's analysis in *Ford*, the relevant question on causation here is: would Malek have been arrested, handcuffed, had his home searched, and been taken to jail "but for" the officers' desire to punish him for his speech? Based on the facts alleged, the answer is clearly yes. As the Officers point out, the cases Malek cites to support his contention that he has plausibly alleged that the Officers were motivated by "retaliatory animus" are distinguishable. In *Bass v. City of Fremont*, police officers allegedly pulled Bass over and forced him out of his vehicle despite their knowledge that his brake light worked and his registration was current. No. C 12-4943, 2013 WL 891090, at *1 (N.D. Cal. Mar. 8, 2014). When Bass asserted his rights as a citizen, the officers search him and his vehicle, shoved him, put him in overly tight handcuffs, and accused him of being on or selling drugs. *Id*. Without conducting any field sobriety tests, the officers arrested Bass for driving under the influence of a controlled substance and brought him to jail. *Id*.

The *Bass* court held that "[t]he temporal proximity between Bass informing the officers that he had rights as a citizen and the officers' search and arrest of Bass, together with the alleged lack of probable cause for the arrest, permits a reasonable inference that the officers desired to chill his speech." *Id*. at *3. Such circumstances are not present here. As discussed above, this Court has already found that the Officers believed they had probable cause to arrest Malek for a violation of § 29805. Therefore, the facts alleged in the Complaint do not raise the reasonable inference that had Malek not verbally challenged the officers, they would not have arrested and handcuffed him for violating the felony they reasonably believed he committed and searched his home for the firearms they knew that he owned. Accordingly, Malek has not plausibly alleged that the Officers' conduct was motivated by a desire to retaliate against Malek for his assertion of his Second and Fourth Amendment rights. Accepting the allegations as true, the reasonable

36

inference is that the Officers acted the way they did out of a desire to arrest a suspected felon and confiscate the weapons they believed he unlawfully owned.

Similarly distinguishable is *Holland v. City of San Francisco*, where the plaintiff Holland was participating in a public protest when she saw that her girlfriend was being taken away in handcuffs by the police. No. C10-2603, 2013 WL 968295, at *1 (N.D. Cal. Mar. 12, 2013). The evidence showed that Holland was exhaustively questioning police officers as to why they were arresting her girlfriend, saying they had no right to arrest her, and asserting her own "right to be in the street" when the officers ordered her to get back on the sidewalk. *Id*. at *5. On summary judgment, the court held that a reasonable juror could infer from the evidence that "Holland would not have been arrested or subjected to excessive force had it not been for her persistent questioning of the officers and verbal challenges to their authority." *Id*. Again, the Complaint does not allege the sort of exhaustive questioning of police officers in the course of their duties that led the officers in *Holland* to kick the plaintiff to the ground and perform a strip search. Here, the Officers drove to Malek's home after reviewing the PPR, presumably for the purpose of confirming his identity and gun ownership in order to confiscate the guns. Once Malek confirmed his name and that he owned the guns, there is no plausible inference from the facts that he would have avoided their alleged conduct had he remained silent instead of asserting his constitutional rights. That the Officers discussed Malek's realistic options with him before deciding to arrest him does not amount to a claim that the Officers retaliated against him for his assertion of rights, and in fact more plausibly suggests that his arrest was not the preferred option.

For the foregoing reasons, the Officers' motion to dismiss Malek's section 1983 claim for retaliation is GRANTED WITH LEAVE TO AMEND.[4]

### B.    State Law Claims

The Officers move to dismiss Malek's claims under state law on the grounds that the claims challenge the same conduct as the section 1983 claims, and the Officers are shielded by multiple governmental immunities under state law. Mot. 17-25.

---

[4] Because the Court finds that Malek fails to state a claim for retaliation in violation of the First Amendment, the Court does not address the second prong of qualified immunity on this claim.

### i. Bane Act

The Complaint includes a claim for violation of California Civil Code § 52.1, also known as the Bane Act. Compl. ¶¶ 56-61. A defendant is liable under the Bane Act "if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by ... threats, intimidation, or coercion." *Shoyoye v. Cnty. of Los Angeles,* 203 Cal.App. 4th 947, 956 (2012); Cal. Civ.Code § 52.1(a). Although the Bane Act is analogous to § 1983, it is not tantamount to a § 1983 violation, and requires more than evidence of a violation of rights. *Bass v. City of Fremont,* No. C12–4943 TEH, 2013 WL 891090, at * 4 (N.D.Cal. Mar. 8, 2013); *see also Austin B. v. Escondido Union Sch. Dist.,* 149 Cal.App.4th 860, 883, 57 Cal.Rptr.3d 454 (2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law."). In order to state a claim under the Bane Act, Malek must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67, 183 Cal.Rptr.3d 654 (2015). The California Court of Appeal recently clarified that the Bane Act "requires a showing of threatening conduct independent from the alleged interference or violation of a civil right." *Doe v. State*, 8 Cal. App. 5th 832, 842–43, 214 Cal. Rptr. 3d 391, 400 (Ct. App. 2017), review denied (June 14, 2017); *see also Allen*, 234 Cal.App.4th at 66 ("[W]e conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1.").

The Court finds that the Complaint does not plead any independently threatening conduct or intimidation beyond the alleged violations of constitutional rights. Malek argued at the hearing on the motion to dismiss that a Bane Act claim is sufficiently alleged so long as the Complaint contains allegations of an unlawful arrest along with allegations of excessive force. *See Bender v. County of L.A.*, 217 Cal. App. 4th 968, 977 (2013). Malek does not address *Doe v. State*, which is the most recent authority on the issue and explicitly confirms the continued validity of the line of cases holding that something more than an inherently coercive violation is required to state a claim under the Bane Act. 8 Cal. App. 5th at 842–43. Rather than point to any allegations of

intimidation beyond inherent coercion, Malek argues that the Court should hold that the coercion element of the Bane Act "may be intrinsic to constitutional violations." Opp'n 22. This argument fails, and the cases relied on by Malek are either outdated or inapposite.

Thus, Malek has failed to allege any threats, intimidation, or coercion in connection with an alleged constitutional violation. The law is clear under *Doe v. State*, *Allen*, and *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) that not all constitutional violations by police officers constitute Bane Act violations. Therefore, following this precedent, the Court holds that Malek must allege threatening conduct separate from the coercion inherent in the alleged constitutional violations. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("In the absence of a controlling California Supreme Court decision, [a federal court] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.").

For these reasons, the Court GRANTS WITH LEAVE TO AMEND the Officers' motion to dismiss Malek's Bane Act claim.

### ii. State Law Immunities and Punitive Damages

As stated above and at the hearing on the motion to dismiss, Malek's constitutional claims are largely in need of amendment based on the deficiencies described above. The Officers have also asserted a host of state law immunities and challenged the adequacy of Malek's punitive damages prayer. Any amendments on the constitutional claims will also impact the viability of certain state law claims and Malek's prayer for punitive damages. Although a final determination on these issues is more appropriate when the operative pleading on the constitutional violations is set and it is clear which constitutional claims will proceed, the Court provisionally addresses the state law immunities below. Importantly, where the Court granted qualified immunity under the second prong above, the state law claims based on such conduct do not necessarily fail. In sum on the constitutional claims, the Court does not determine whether the Complaint sufficiently alleges a claim of unlawful entry to arrest or a claim of excessive force. The Court does, however, conclude that under the facts as pled, the Officers had probable cause to arrest Malek, that Officers

Sandri and Favela acted reasonably in executing the search warrant, and that Malek does not plausibly allege a First Amendment retaliation claim. However, the Officers did not move to dismiss the constitutional claims arising from the pre-warrant search or claims against Officer Green related to his procurement and execution of the search warrant.

Where the Court DENIES the Officers' motion to dismiss pursuant to certain state law immunities below, the denial is without prejudice to the Officers reasserting the immunities at a later stage of the litigation, including on a subsequent motion to dismiss. Finally, because the Complaint alleges claims against Officer Green with respect to the search warrant, the Court finds that the punitive damages claim is adequately pled for that claim. The Court now addresses the applicability of the various state law immunities asserted by the Officers.

### a. California Government Code § 820.8

California Government Code § 820.8 bars state law claims against public employees for damages for "an injury caused by the act or omission of another person." Malek appeared to concede at the hearing that the Complaint does not allege vicarious liability. ECF 42, 61:13-23. Thus, § 820.8 is not applicable to the extent the Complaint alleges only that the Officers are responsible for their own actions. To the extent Malek seeks to hold the Officers jointly and severally liable under state law, the Officers' motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND pursuant to § 820.8.

### b. California Government Code § 821.6

The Officers argue that California Government Code § 821.6 immunizes the Officers to all of Malek's state law claims other than those based on false arrest or false imprisonment. Mot. 21. However, the Ninth Circuit recently held that the "prosecutorial" immunity under § 821.6 is limited to malicious-prosecution claims. *See Sharp*, 2017 WL 4126947, at *16. Even though the Officers cite to decisions by intermediate appellate courts in California that have expanded the immunity to other action by police officers, the California Supreme Court held that § 821.6 does not extend beyond malicious prosecution claims. *See Sullivan v. Cty. of Los Angeles*, 12 Cal.3d 710 (1974). Because "California's highest court has not extended § 821.6 immunity to actions outside of malicious prosecution," the Court finds that this immunity does not apply in this case.

*Sharp*, 2017 WL 4126947, at *16. Accordingly, the Officers' motion to dismiss pursuant to § 821.6 is DENIED.

### c. California Penal Code §§ 835, 836, 847(b)

The Officers argue that they are immune from liability under state law for arrests made with probable cause pursuant to California Penal Code § 836. Specifically, the Officers argue that Malek's "false arrest or imprisonment" claim must be dismissed under California Penal Code § 847(b). The false-arrest immunity under § 847(b)(1) protects officers from suit when they make an arrest that they had "reasonable cause" to believe was lawful. "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." *See Levin v. United Airlines*, 158 Cal. App. 4th 1002, 1018 (2008), *as modified* (Jan. 14, 2008); *see also O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511 (2006). The "reasonable cause" inquiry is an objective standard. *Levin*, 158 Cal. App. 4th at 1018. As one California intermediate appellate court noted, "[t]he terms reasonable cause and probable cause as used in the context of an arrest appear to be interchangeable." *Id*. at 1017 n.18.

Because the Court concludes above that the Officers had probable cause to arrest Malek based on the facts alleged, the Court finds that the Complaint also alleges that the Officers had "reasonable cause" to believe the arrest was lawful. Accordingly, § 847(b) applies and the Officers are entitled to immunity from Malek's state law "false arrest or imprisonment" claim. Although the Court already dismissed the Bane Act claim, to the extent Malek amends the factual allegations underlying the Bane Act claim the Court notes that § 847(b) would also immunize the Officers from Bane Act liability premised on false arrest and imprisonment. For these reasons, the Officers' motion to dismiss Malek's "false arrest or imprisonment" claim is GRANTED WITH LEAVE TO AMEND.

However, the Court does not reach the question of whether the Officers are immune under California Penal Code § 835, which provides that an arrestee "may be subjected to such restraint as is reasonable for his arrest and detention." The Court did not determine above whether the alleged facts adequately pled a constitutional violation for excessive force because it granted the

Officers' motion to dismiss the excessive force claim under the second prong of qualified immunity. Malek's claims for "assault and battery" and negligence arise from his allegations that the Officers used excessive force. And "California denies immunity to police officers who use excessive force in arresting a suspect." *Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (citing *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215 (1991). Therefore, the Officers' motion to dismiss Malek's state law claims for "assault and battery" and negligence pursuant to § 835 is DENIED without prejudice to re-asserting the statutory immunity at a later point in the litigation.

### d. California Government Code § 820.4

California Government Code § 820.4 similarly only immunizes the Officers from certain state law claims. § 820.4 provides that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." As discussed above, the Court finds that Officers Sandri and Favela acted reasonably in executing the search warrant. Therefore, the Court GRANTS WITH LEAVE TO AMEND the Officers' motion to dismiss Malek's state law claims challenging the conduct of Officers Sandri and Favela related to their execution of the search warrant pursuant to § 820.4.

However, the Officers did not move to dismiss the section 1983 claims with respect to the pre-warrant search or Officer Green's procurement and execution of the search warrant. The Court therefore cannot conclude that this conduct was an exercise of "due care" and does not find that the Officers are entitled to dismissal on Malek's state law claims challenging such conduct. The Officers' motion to dismiss Malek's state law claims pursuant to § 820.4 is therefore DENIED with respect to the pre-warrant search of Malek's home as well as Officer Green's search warrant-related conduct. This denial is without prejudice to the Officers reasserting this statutory immunity at a later stage of the litigation.

### e. California Government Code § 262.1

The Officers argue that California Government Code § 262.1, immunizes all three Officers, including Officer Green, from liability for Malek's state law claims based on an allegedly deficient warrant. Mot. 22-24. The Court has already held that Officers Sandri and

Favela are immune from state law claims related to the search warrant pursuant to § 820.4 because they acted with "due care" in executing the warrant. Thus, the only remaining issue under § 262.1 is whether Officer Green is also immune from state law claims related to the warrant. The Court finds that he is not.

California Government Code § 262.1 provides that "[a] sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." This immunity plainly does not apply to Malek's allegations regarding Officer Green's judicial deception in procuring the warrant, since such conduct occurred before the search warrant was issued. Moreover, to the extent the state law claims are based on Officer Green's liability for the execution of the search warrant, Malek plausibly alleges that the search warrant was not "regular" on its face because it was overbroad and facially invalid. The Court recognizes what the Officers describe as California's "forgiving immunity standard" under this provision which requires the validity of a warrant to be judged by "an ordinarily intelligent and informed layman." *Vallindras v. Massachusetts Bonding & Ins. Co.*, 42 Cal. 2d 149, 154 (1954). However, the Court finds that § 262.1 does not immunize Officer Green from liability under state law because Malek has adequately alleged that the search warrant was "patently irregular and void" on its face. *Id*. The Officers' motion to dismiss Malek's state law claims pursuant to § 262.1 is therefore DENIED without prejudice to reasserting the statutory immunity at a later stage of the litigation.

IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Officers' Motion to Dismiss Malek's § 1983 claims for unlawful arrest is GRANTED WITH LEAVE TO AMEND as to all of the Officers.

2. The Officers' Motion to Dismiss Malek's § 1983 claims for excessive force is GRANTED WITH LEAVE TO AMEND as to all of the Officers.

3. The Officers' Motion to Dismiss Malek's § 1983 claims for unlawful search and seizure is GRANTED WITH LEAVE TO AMEND as to the execution of the warrant by Officers Sandri and Favela.

4. The Officers' Motion to Dismiss Malek's § 1983 claims for retaliation is GRANTED WITH LEAVE TO AMEND as to all of the Officers.

5. The Officers' Motion to Dismiss Malek's Bane Act claims is GRANTED WITH LEAVE TO AMEND as to all of the Officers.

6. The Officers' Motion to Dismiss Malek's state law claims for joint and several liability pursuant to California Government Code § 820.8 is GRANTED WITHOUT LEAVE TO AMEND.

7. The Officers' Motion to Dismiss Malek's state law claims pursuant to California Government Code § 821.6 is DENIED.

8. The Officers' Motion to Dismiss Malek's state law claims pursuant to California Penal Code § 836 and § 847(b) is GRANTED WITH LEAVE TO AMEND.

9. The Officers' Motion to Dismiss Malek's state law claims pursuant to § 835 is DENIED without prejudice to reasserting the immunity at a later stage of the litigation.

10. The Officers' Motion to Dismiss Malek's state law claims pursuant to California Government Code § 820.4 is GRANTED IN PART WITH LEAVE TO AMEND as to Officers Sandri and Favela for their execution of the search warrant, and DENIED IN PART with respect to claims related to the pre-warrant search and Officer Green's warrant-related conduct.

11. The Officers' Motion to Dismiss Malek's state law claims pursuant to California Government Code § 262.1 is DENIED without prejudice to reasserting the immunity at a later stage of the litigation.

12. The Officers' Motion to Dismiss Malek's prayer for punitive damages as to the remaining claims is DENIED without prejudice to raising the arguments at a later stage of the litigation.

If Malek wishes to amend, he must file an amended complaint **on or before 21 days from the date of this Order.**  In the event that a motion to dismiss the amended complaint is filed, the Court requests that the chambers copy of any amended complaint be a redlined version, in color.

Dated:  September 27, 2017

BETH LABSON FREEMAN
United States District Judge