MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
MAYA SORENSEN (State Bar No. 250722)
TERESA ALLEN (State Bar No. 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Attorneys for Plaintiff
POURYA MALEK

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POURYA MALEK, individually, | ) No. 5:17-cv-00263-BLF |
| Plaintiff, | ) |
| vs. | ) |
| CALIFORNIA DEPARTMENT OF JUSTICE; SPECIAL AGENT JEFFERY GREEN; CALIFORNIA DEPARTMENT OF JUSTICE SPECIAL AGENT SUPERVISOR LANCE SANDRI; CALIFORNIA DEPARTMENT OF JUSTICE SPECIAL AGENT ELISARDO FAVLA; and DOES 1–10, Jointly and Severally | ) **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND, "OMNIBUS" MOTION TO DISMISS** |
| Defendants. | ) Date: May 3, 2018 Time: 9:00 a.m. Courtroom: 3, Fifth Floor Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS ........................................................................................... 1

II.     STANDARDS OF REVIEW ....................................................................................... 4

III.    ARGUMENT ............................................................................................................... 9

        A.      Defendants are each liable for all rights they violated directly, or by setting
                in motion violations by each other, or as integral participants, or by failing
                to intervene in violations of rights by each other........................................... 9

        B.      Plaintiff has properly pled that Defendants arrested him without probable
                cause9

        C.      Plaintiff has properly pled that Defendants' warrantless entry to his home
                was unlawful ................................................................................................. 13

                1.      Defendants did not arrest Plaintiff at his door or with probable cause
                        ........................................................................................................ 14

                2.      Defendants lacked exigent circumstances ...................................... 15

        D.      Plaintiff has properly pled that Defendants' pre-warrant search was
                unlawful ......................................................................................................... 18

        E.      Plaintiff has properly pled that Defendants obtained the warrant by judicial
                deception ....................................................................................................... 18

        F.      Plaintiff has properly pled that Defendants collectively subjected him to
                excessive force .............................................................................................. 19

        G.      Plaintiff has properly pled that Defendants unlawfully retaliated for his
                exercise of rights .......................................................................................... 21

        H.      Plaintiff has properly pled that Defendants violated the Bane Act.............. 23

        I.      Defendants do not have state law immunity from Plaintiff's state law claims
                ........................................................................................................................ 24

        J.      Defendants' remaining issues raised in their motion are meritless.............. 25

IV.     CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Adams v. Kraft,*
  828 F. Supp. 2d 1090 (N.D. Cal. 2011) ..........................................................22

*Alford v. Haner,*
  333 F.3d 972 (9th Cir. 2003) ....................................................................10

*Anderson v. Creighton,*
  483 U.S. 635 (1987)................................................................................6

*Arizona v. Evans,*
  514 U.S. 1 (1994)...............................................................................11, 12

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) ....................................................................4

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011)................................................................................6

*Bailey v. Newland,*
  263 F.3d 1022 (9th Cir. 2001) ..................................................................15

*Beier v. City of Lewiston,*
  354 F.3d 1058 (9th Cir. 2004) ..............................................................10, 13

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007)................................................................................5

*Blankenhorn v. City of Orange,*
  485 F.3d 463 (9th Cir. 2007) .................................................................9, 25

*Boyd v. Benton County,*
  374 F.3d 773(9th Cir. 2004) ....................................................................9

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994) ..................................................................4, 19

*Bravo v. City of Santa Maria,*
  665 F.3d 1076 (9th Cir. 2011) ..................................................................18

*Braxton-Secret v. Robins Co.,*
  769 F.2d 528 (9th Cir. 1985) ....................................................................23

*Brosseau v. Haugen,*
  543 U.S. 194 (2007)................................................................................7

*Cabrales v. Cnty. of Los Angeles,*
  864 F.2d 1454 (9th Cir. 1988) ..................................................................25

*Chaudhry v. City of Los Angeles,*
  751 F.3d 1096 (9th Cir. 2014) ..................................................................24

*Chuman v. Wright*,
   76 F.3d 292 (9th Cir. 1996) ........................................................................9

*City of Houston v. Hill*,
   482 U.S. 451 (1987)..................................................................................21

*County of Los Angeles v. Mendez*,
   __ U.S. __, 137 S.Ct. 1539 (2017)............................................................21

*Cunningham v. Gates*,
   229 F.3d 1271 (9th Cir. 2000) ....................................................................9

*Deorle v. Rutherford*,
   272 F.3d 1272 (9th Cir. 2001) ....................................................................6

*Devenpeck v. Alford*,
   543 U.S. 146 (2004)..................................................................................10

*Drummond v. City of Anaheim*,
   343 F.3d 1052 (9th Cir. 2003) ..............................................................8, 13

*Erickson v. Pardus*,
   551 U.S. 89 (2007)......................................................................................5

*Estate of Lopez v. Gelhaus*,
   871 F.3d 998 (9th Cir. 2017) ...................................................................6, 7

*Ford v. City of Yakima*,
   706 F.3d 1188 (9th Cir. 2013) ........................................................6, 22, 23

*Galbraith v. County. of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) ..................................................................18

*General Motors v. Doupnik*,
   1 F.3d 862 (9th Cir. 1993) ........................................................................25

*Graham v. Connor*,
   490 U.S. 386 (1989)...............................................................................7, 19

*Green v. CCSF*,
   751 F.3d 1039 (9th Cir. 2014) ..................................................................12

*Hardwick v. County. of Orange*,
   844 F.3d 1112 (9th Cir. 2017) .................................................7, 8, 10, 13

*Harris v. New York*,
   495 U.S. 14, 109 L. Ed. 2d 13, 110 S. Ct. 1640 (1990)..........................14

*Headwaters Forest Def. v. County. of Humboldt*,
   276 F.3d 1125 (9th Cir. 2002) ....................................................................8

*Heien v. North Carolina*,
   __ U.S. __, 135 S.Ct. 530 (2014)........................................................10, 13

*Hightower v. Tilton*,

No. C08-1129-MJP,
2012 U.S. Dist. LEXIS 50362 (E.D. Cal. Apr. 10, 2012) 5

*Hoa v. Riley,*
78 F.Supp.3d 1138 (N.D. Cal. Jan. 26, 2015)...................................................25

*Hope v. Pelzer,*
536 U.S. 730 (2002)........................................................................................6, 7

*Hopkins v. Bonvicino,*
573 F.3d 752 (9th Cir. 2009) .........................................................................14, 15

*Hughes v. Kisela,*
862 F.3d 775 (9th Cir. 2017) ...........................................................................6, 7

*Johnson v. Bay Area Rapid Transit Dist.,*
724 F.3d 1159 (9th Cir. 2013) ..............................................................................8

*Johnson v. Duffy,*
588 F.2d 740 (9th Cir. 1978) ................................................................................9

*Johnson v. Shasta County.,*
83 F.Supp. 3d 918 (E.D. Cal. Jan. 6, 2015) .........................................................5

*Kennedy v. City of Ridgefield,*
439 F.3d 1055 (9th Cir. 2006) ..............................................................................8

*Kentucky v. King,*
563 U.S. 452, 462 (2011)....................................................................................17

*Kyllo v. United States,*
533 U.S. 27 (2001)........................................................................................13, 14

*Lacey v. Maricopa County. (Arpaio),*
693 F.3d 896 (9th Cir. 2012) ..........................................................................5, 22

*LaLonde v. County. of Riverside,*
204 F.3d 947 (9th Cir. 2000) ......................................................................passim

*Liston v. County. of Riverside,*
120 F.3d 965 (9th Cir. 1997) ..........................................................................18, 20

*Littlefield v. Viveros,*
No. 1:06-cv-1530 OWW-DLB,
2007 U.S. Dist. LEXIS 89567; 2007 WL 4284864 (E.D. Cal. Dec. 4, 2007) ...................12

*Lolli v. County. of Orange,*
351 F.3d 410 (9th Cir. 2003) ..............................................................................20

*Longoria v. Pinal County,*
873 F.3d 699 (9th Cir. 2017) ................................................................................7

*Mahrt v. Beard,*
No. 1:14-CV-1696 NJV,
2015 U.S. Dist. LEXIS 83516 (N.D. Cal. June 26, 2015) ...............................16

*Maryland v. Buie*,
    494 U.S. 325 (1990)...................................................................................18

*Mattos v. Agarano*,
    661 F.3d 433(9th Cir. 2011) ........................................................................6

*Memphis Community School Dist.* v. *Stachura*,
    477 U. S. 299 (1986)...................................................................................21

*Mendocino Environmental Center v. Mendocino County*,
    192 F.3d 1283 (9th Cir. 1999) ............................................................11, 19

*Meredith v. Erath*,
    342 F.3d 1057 (9th Cir. 2003) ....................................................................21

*Monroe v. Pape*,
    365 U.S. 167 (1961)...................................................................................14

*Morales v. Fry*,
    873 F.3d 817 (9th Cir. 2017) ......................................................................23

*Motley v. Parks*,
    432 F.3d 1072 (9th Cir. 2005) ....................................................................11

*Muehler v. Mena*,
    544 U.S. 93 (2005)....................................................................................20

*Mullenix v. Luna*,
    136 S. Ct. 308..............................................................................................6

*Ohlsen v. Cnty. of San Joaquin*,
    No. 2:06-cv-2361-GEB,
    2008 U.S. Dist. LEXIS 44566 (E.D. Cal. June 4, 2008)...........................16

*Payton v. New York,*
    445 U.S. 573 (1980)...................................................................15, 16, 18

*Provencio v. Vazquez,*
    258 F.R.D. 626 (E.D. Cal. July 29, 2009)..................................................25

*Quintero v. City of Escondido,*
    No.: 15-cv-2638-BTM-BLM,
    2017 U.S. Dist. LEXIS 147579; 2017 WL 4005345 (S.D. Cal. Sept. 11, 2017)...............15

*Reed v. Lieurance,*
    863 F.3d 11964 (9th Cir. 2017) ....................................................................8

*Robinson v. Solano Cnty.,*
    278 F.3d 1007 (9th Cir. 2002) ....................................................................25

*Rosenbaum v. Washoe Cty.,*
    663 F.3d 1071 (9th Cir. 2011) ......................................................................8

*Sharp v. County of Orange,*

871 F.3d 901 (9th Cir. 2007) ....................................................................22

*Sialoi v City of San Diego*,
823 F.3d 1223 (9th Cir. 2016) ............................................................6, 8

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ...................................................................4

*Skoog v. County of Clackamas*,
469 F.3d 1221 (9th Cir. 2006) .................................................................22

*Smith v. Sergent*,
No. 2:15-cv-0979 GEB,
2017 U.S. Dist. LEXIS 159265; 2017 WL 4284659 (E.D. Cal. Sept. 27, 2017) ...............20

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ...................................................................5

*Swierkiewicz v. Sorema, N.A.*,
534 U.S. 506 (2002)..................................................................................5

*Thompson v. Lake*,
607 F. App'x 624 (9th Cir. 2015) ...........................................................21

*Tolan v. Cotton*,
__ U.S. __, 134 S.Ct. 1861 (2014)......................................................6, 7

*Torres v. City of Madera*,
648 F.3d 1119 (9th Cir. 2011) .................................................................12

*United States v. Botero*,
589 F.2d 430 (9th Cir. 1978) ..................................................................14

*United States v. Eberle*,
993 F.Supp. 794 (D. MT 1998)................................................................17

*United States v. Jerez*,
108 F.3d 684 (7th Cir. 1997) ..................................................................13

*United States v. Johnson*,
12 F.3d 760 (8th Cir. 1993) ....................................................................17

*United States v. Johnson*,
256 F.3d 895 (9th Cir 2000) ..............................................................15, 17

*United States v. Koon*,
34 F.3d 1416 (9th Cir. 1994) ....................................................................9

*United States v. Lindsey*,
877 F.2d 777 (9th Cir. 1989) ..................................................................18

*United States v. Lundin*,
817 F.3d 1151 (9th Cir. 2016) .................................................................17

*United States v. Mariscal*,

285 F.3d 1127 (9th Cir. 2000) ...................................................................10

*United States v. Miguel*,
368 F.3d 1150 (9th Cir. 2004) ...................................................................12

*United States v. Nora*,
765 F.3d 1049 (9th Cir. 2014) ...................................................................17

*United States v. Perea-Rey*,
680 F.3d 1179 (9th Cir. 2012) ...................................................................17

*United States* v. *Richard*,
994 F.2d 244 (5th Cir. 1993) .....................................................................17

*United States v. Santana*,
427 U.S. 38 (1976)............................................................................14, 18

*United States v. Struckman*,
603 F.3d 731 (9th Cir. 2010) ................................................................9, 15

*United States v. Vaneaton*,
49 F.3d 1423 (9th Cir. 1995) .....................................................................14

*Vasquez v. Los Angeles County.*,
487 F.3d 1246 (9th Cir. 2007) .................................................................4, 9

*Velazquez v. City of Long Beach*,
793 F.3d 1010 (9th Cir. 2015) ..............................................................19, 21

*Wall v. County of Orange*,
364 F.3d 1107 (9th Cir. 2004) ...................................................................20

*Welsh v. Wisconsin*,
466 U.S. 740 (1984).................................................................................13

*White v. Pauly*,
137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) .............................................6, 7, 21

*Willis v. Mullins*,
517 F.Supp.2d 1206 (E.D. Cal. 2007)..........................................................12

*Young v. County of Los Angeles*,
655 F.3d 1156 (9th Cir. 2011) .....................................................................8

*Zion v County of Orange*,
874 F.3d 1072 (9th Cir. 2017) ......................................................................7

**California Cases**

*Bender v. County of Los Angeles*,
217 Cal.App.4th 968 (2013) ......................................................................24

*Cornell v. City and County of San Francisco*,
_____Cal.App.4th __, 2017 Cal.App. LEXIS 1011, 2017 WL 5495096 (Cal. Ct. App. Nov. 16, 2017)
...........................................................................................23, 24, 25

*Shoyoye v. County of Los Angeles,*
    203 Cal.App.4th 947 (2012) .................................................................................24

*Simmons v. Superior Court of San Diego County,*
    7 Cal. App. 5th 1113 (2016) ..............................................................................24

*Venegas v. County of Los Angeles,*
    32 Cal.4th 820 (2004) .......................................................................................23

## **California Statutes**

California Civil Code § 52.1 ................................................................................23, 24

California Government Code § 820.4 ........................................................................25

California Penal Code § 29805 ..........................................................................passim

California Penal Code § 30305 ...................................................................................4

California Penal Code § 417.4 ..........................................................................1, 2, 3

California Penal Code § 835 ......................................................................................25

California Penal Code § 847(b) .................................................................................25

## **Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................5

Federal Rule of Civil Procedure 8(a)(2) .....................................................................5

## **Other Authorities**

Ninth Circuit Civil Jury Instruction 9.23 ...................................................................9

Ninth Circuit Civil Jury Instruction 9.20, ................................................................24

1

## I.   STATEMENT OF FACTS

2          This civil rights case arises from Defendants' warrantless search and seizure of Plaintiff Pourya

3  Malek in his home.  The incident at Plaintiff's home on February 4, 2016, started at 9 p.m. and did not

4  end until around 1:00 p.m. the following day when Mr. Malek was released from jail.

5          On February 4, 2016, Defendants Jeffrey Green, Lance Sandri, and Elisardo Favela reviewed a

6  California Department of Justice-Bureau of Firearms Armed Prohibited Person System (APPS),

7  Prohibited Person Report (PPR), which had been generated nearly three months prior.  (Doc. 52 ¶ 42).[1]

8  The PPR stated that Plaintiff had been convicted of California Penal Code § 417.4 (Brandishing a Replica

9  Firearm) in 2012, a violation that does not prohibit the person convicted from owning or possessing

10 firearms.  (¶ 43).

11         Based on two audits that found that the DOJ failed to properly maintain the APPS database in

12 connection with mental health-based firearms prohibitions, Plaintiff pled on information and belief that

13 the database's criminal conviction-based firearms prohibitions were similarly flawed and inaccurate.  (¶¶

14 17-30).  In July, 2015, the State Auditor recommended that the DOJ "needs to implement quality control

15 procedures over **all** of its determinations, regardless of whether the APPS unit staff determine that an

16 individual is prohibited or not prohibited from firearm ownership," (emph. added), and on information

17 and belief, this broad finding applied to the DOJ's handling of the entire APPS database.  (¶¶ 31-32).

18 DOJ Bureau of Firearms agents, like Defendants, are supposed to investigate individuals on the armed

19 prohibited persons list *before* attempting confiscation – because they have been informed that the APPS

20 system is unreliable – "**to ensure** that information about his or her firearms, address, and **the reason for**

21 **prohibition are correct** and up to date."  (¶¶ 36-37).  The DOJ required Defendants Sandri, Green and

22 Favela to review each individual on the armed prohibited person list to ensure that the reason for

23 prohibition is correct because they are trained, and know, that the APPS database is notoriously

24 inaccurate.  (¶ 38).  On information and belief, Defendants Sandri, Green and Favela knew about the State

25 Auditor's Reports; knew that the APPS database is inaccurate, as much as 60% of the time; and that the

26 DOJ Bureau of Firearms required them, before attempting confiscation of a person's firearms, to ensure

27 that the reason for the prohibition, such as a prior criminal conviction, was correct.  (¶ 39).

28         In reckless disregard of their training, DOJ Bureau of Firearms policy, and Plaintiff's civil rights,

---

[1] All further paragraph references are to the First Amended Complaint ("FAC").  (Doc. 52).

neither Defendant Sandri, Green or Favela performed the required review of the PPR for Plaintiff Malek, including but not limited to checking Cal. Penal Code § 29805, to ensure that the conviction of Penal Code § 417.4 listed on the PPR truly prohibited Plaintiff Malek from possessing firearms.  If they had, then they would have seen that a § 417.4 misdemeanor conviction was *not* a "prohibiting event."  (¶¶ 44-45).  It was therefore objectively unreasonable for Defendants to rely solely on the PPR, generated from the APPS database, which all Defendants, on information and belief, knew to be inaccurate. (¶ 46).

All of Plaintiff's firearms were registered, which was how Defendants knew he possessed them. (¶¶ 19, 64).  Without any exigent circumstances or further investigation, Defendants decided that very day, February 4, 2016, to get Plaintiff to voluntarily surrender his firearms, and to cite and release him, but not to arrest him and take him to jail, for that wobbler felony.   (¶ 48).   No Defendant read or heeded Penal Code § 29805, which on its face omits § 417.4 as a crime prohibiting firearm possession.  (¶ 45).

Defendants knocked on Plaintiff's door after dark at 9:00 p.m.  (¶¶ 50-51).  Plaintiff partially opened the front door while standing well within his home, some feet away from the front door's threshold.  *Id.*  At that hour of night, Plaintiff's wife was in her pajamas.  (¶ 69).  Defendant Green told Plaintiff that he was prohibited from owning firearms due to his 2012 conviction; Plaintiff accurately responded that Defendants were wrong.  (¶¶ 51-52).  Defendant Green then told Plaintiff that he needed to give him all of his firearms; Plaintiff requested Defendants to produce a warrant.  (¶¶ 53-54).  Defendants Sandri, Green and Favela became visibly irritated with Plaintiff Malek's repeated assertions of his rights.  (¶ 54).  Defendants told Mr. Malek he could either give up his firearms voluntarily, in which case Defendants ***would not take him to jail***, **or** if he insisted upon exercising his right not to have his firearms seized without a search warrant, the incident would be prolonged and Defendants ***would arrest him and take him to jail***.  (*Id.*).  Plaintiff again asserted his Constitutional rights, closed the door slightly, stepped back further into his house, stated that he wanted a warrant and to speak to his attorney. (¶ 55).

On information and belief, Defendants Sandri, Green and Favela had not planned to effect Plaintiff Malek's custodial arrest, to enter his home and handcuff him, or to search his home.  Rather, Defendants had planned to cite and release Plaintiff Malek after he voluntarily surrendered his firearms. Because Plaintiff did not "do things the easy way" as Defendants demanded, and because he insisted on a search warrant and vocally challenged Defendants' assertion that he was prohibited from possessing firearms, Defendants punished him for his "defiance" by forcefully entering his home, arresting him, painfully

handcuffing him for about nine hours, subjecting him to painful and degrading treatment during that time, and then taking him to jail.  (¶ 56; see also ¶¶ 64-66).

Defendant Sandri barged into Plaintiff Malek's home, crossing the threshold, pushing open the front door, and forcing Plaintiff Malek to walk backwards further into his home so that Defendant Sandri would not walk into him.  Defendants Green and Favela followed.  (¶ 57).  Defendants arrested Plaintiff in his living room, and Defendants Sandri and Green spitefully handcuffed Plaintiff behind his back tightly with only a single set of handcuffs.  Defendants saw that Plaintiff Malek, about 6'1", 240 lbs., was broad-shouldered, and violated their training and department's policies that said Plaintiff should have been handcuffed with two sets of handcuffs to avoid causing unnecessary pain and/or injury.  (¶ 58).

Defendant Sandri remained with Malek while Green and Favela searched the house for, among other things, the firearms that they would be seeking a warrant to permit them to search for.  (¶¶ 60-61).

Special Agent Supervisor Defendant Sandri, the leader of the operation at Plaintiff Malek's home, instructed Officer Green to obtain a search warrant with reckless disregard for the false statement that he knew Green would include in his statement of probable cause: that § 417.4 is a predicate offense to § 29805.  (¶ 67).  "Defendant GREEN made this false statement of law deliberately or with reckless disregard for the truth.  California Penal Code § 29805 on its face does *not* specify a misdemeanor conviction of California Penal Code § 417.4 as one of the offenses prohibiting a person from owning or possessing firearms.  The search warrant lacked probable cause on its face to support a search or arrest under California Penal Code § 29805."  (¶ 77).

Plaintiff no longer brings claims based on the warrant's overbreadth.

After a few hours, Plaintiff began telling Defendants Sandri and Favela that the handcuffs were too tight on his wrists and were painfully contorting his previously injured back.  (¶ 71).  Defendants Sandri and Favela ignored Plaintiff's repeated complaints about the painful handcuffing.  *Id*. Plaintiff also asked Defendant Sandri to handcuff him in front, due to his pain; Sandri refused.  (¶ 72).  DOJ policy did not prohibit Defendant Sandri from accommodating Plaintiff's request to be cuffed in front.  (¶ 73).  Defendant Sandri ignored several requests by Plaintiff to take his prescribed pain medication for his back and shoulder pain caused by the overly tight handcuffing with a single set of cuffs.  (¶ 76).  Defendants also kept the front door open causing the house to be cold, and did not allow Plaintiff to put on warm clothes or turn on the heat.  (¶ 70).  And, Sandri and Favela only allowed Plaintiff to use the bathroom

with an agent handcuffed to him at all times.  (¶ 75).  During the entire encounter, Plaintiff behaved peacefully and lawfully, never disobeyed any of Defendants' orders, and never threatened anyone.  (¶ 89).

Plaintiff gave Defendants access to his firearms at about 4:15 a.m., after they got the search warrant.  (¶¶ 80-81).  Around 6:00 a.m., Defendants transported Plaintiff to jail.  (¶¶ 84-86).  Mr. Malek had remained, painfully, in handcuffs for about nine hours, despite his complaints of pain to Defendants. *Id.*  Mr. Malek was booked into jail for violation of Cal. Penal Code §§ 29805 and 30305 (prohibiting possession of ammunition, based on a violation of § 29805).  (¶ 86).  He was released from jail at around 1:00 P.M. on February 5, 2016 – a total of about sixteen hours in custody.  *Id.*

By 6:00 p.m. that same day, February 5, Defendants had finally done what reasonable officers would have done before going to Plaintiff's house; they realized that Plaintiff was correct – they had no legal basis to arrest Plaintiff or seize his guns.  (¶ 87).  Defendant Sandri determined that Defendants' "paperwork" was incorrect by doing the investigation he was trained to do and that any reasonable officer under the circumstances would have done *before* going to Plaintiff's home at 9:00 p.m.  *Id.*  Defendant Sandri called Plaintiff to let him know he was not prohibited from owning firearms and that the PPR was incorrect.  *Id.*  At approximately 9:00 p.m. that same day, Defendants returned the seized firearms.  (*Id.*).

Defendant Sandri supervised Defendants Green and Favela throughout these events, and each Defendant was an "integral participant" in all conduct described in the complaint, "including the wrongful search, seizure, and use of excessive force against Plaintiff Malek."  (¶¶ 7, 12, 49, 88).

## II.   STANDARDS OF REVIEW

**Rule 12(b)(6) Motions.**  Defendants' "Introduction" to their brief contains disputed factual assertions that are not in the FAC.  (Doc. 55, pp. 1-2).  The Court should not consider such material outside the complaint in ruling on Defendants' motion.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994).  Defendants' recitation of the facts pleaded in the complaint is also incomplete and stated in Defendants' favor.

A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007), and it "'must consider the complaint in its entirety[.]'"  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

A complaint must satisfy the general notice pleading requirements of Federal Rule of Civil

Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule. Civ. P. 8(a)(2). This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 (2002).

In *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), the Court held that "a complaint attacked by a Fed. Rule Civ. Proc. 12(b)(6) motion to dismiss does not need detailed factual allegations." The allegations must only "be enough to raise a right to relief above the speculative level." *Id.* *Twombly* stressed that the claims need not be probable, but must be "plausible," which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the allegations. *Id.*

*Twombly* explained: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (quotations omitted). Two weeks after deciding *Twombly*, the Court issued *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading scheme:

> Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only **"give the defendant <u>fair notice</u> of what the . . . claim is and the grounds upon which it rests."**

*Id.* at 93 (citing *Twombly,* 550 U.S. at 555) (emphasis added).

"If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (emphasis in original). More recently, the *en banc* Ninth Circuit explained: "*Iqbal* demands more of plaintiffs than bare notice pleading [cites omitted], but it does not require us to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa Cnty. (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (*en banc*).

Pleading facts "'on information and belief' is sufficient so long as the other *Iqbal-Twombly* factors are satisfied." *Johnson v. Shasta Cnty.*, 83 F.Supp. 3d 918, 926 (E.D. Cal. Jan. 6, 2015) (citing *Hightower v. Tilton*, No. C08-1129-MJP, 2012 U.S. Dist. LEXIS 50362, at *3–4 (E.D. Cal. Apr. 10, 2012). Unless amendment would be futile, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2). *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

**Qualified Immunity.**  "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Hughes v. Kisela*, 862 F.3d 775, 782-83 (9th Cir. 2017).  A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Sialoi v City of San Diego*, 823 F.3d 1223, 1231 (9th Cir. 2016) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Both steps of the qualified immunity analysis must be done considering the facts in the light most favorable to the plaintiff. *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017).  The Supreme Court recently re-affirmed this standard in *Tolan v. Cotton*, __U.S.__, 134 S.Ct. 1861, 1866 (2014), because the Fifth Circuit "failed to view the evidence at summary judgment in the light most favorable to [the Plaintiff], and "fail[ed] to credit evidence that contradicted some of its key factual conclusions."

The Supreme Court has advised lower courts construing claims of qualified immunity in excessive force cases "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  However,

> The inverse of a "high level of generality" is not … a previous case with facts identical to those in the instant case — because, of course, no two cases are exactly alike. The Supreme Court has repeatedly stated that "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741); *see also White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam). Were the rule otherwise, as we have previously observed, "officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001). "If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). It is thus "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, [536 U.S. at 741].

*Hughes v. Kisela*, 862 F.3d 775, 2017 U.S. App. LEXIS 11466 (9th Cir. June 27, 2017) (Berzon, J., concurring in the denial of rehearing en banc).[2]  See also, *Longoria v. Pinal County*, 873 F.3d 699, 709

---

[2] This Court previously noted: "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances."  (Doc. 49, Order, pp. 7-8) (citing *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013)). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

(9th Cir. 2017) ("in an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2007).

The "salient question" for qualified immunity remains whether the state of the law at the time gave the defendant "fair warning" that his alleged conduct was unconstitutional. *Tolan*, 134 S. Ct. at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Ninth Circuit continues to apply the "fair warning" standard articulated in *Hope* and *Tolan*. *Estate of Lopez*, 871 F.3d at 1020 ("fair notice"); *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) ("general statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful'") (citing *Hope* 536 U.S. at 741)). Any requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard" that is "not consistent with our cases." *Hope*, 536 U.S. at 739.

The Supreme Court did not overturn more than 30 years of qualified immunity jurisprudence by one *per curiam* opinion, *White v. Pauly, supra*. For example, in **excessive force** cases after *White*, the Ninth Circuit has denied qualified immunity to officers based on prior cases that were not factually similar to the cases at issue, but that established the general principles that applied to the scenarios at hand. See *Estate of Lopez*, 871 F.3d at 1018-1020 (prior cases gave officer "fair notice" that it was unlawful to shoot thirteen-year-old boy holding replica assault rifle in fast moving situation where reasonable officer would not mistake boy's movements with the gun as an immediate threat); *Zion v County of Orange*, 874 F.3d 1072 (9th Cir. 2017) (no qualified immunity for officer who used deadly force against person who was on the ground and wounded but who officer claimed still posed threat, based on prior cases involving non-deadly force against people already knocked to the ground); see also, *Hughes*, 862 F.3d at 783-785 (where officer shot mentally impaired woman with knife, court compared *Graham v. Connor* factors in other cases involving uses of force against a mentally impaired person).

In **false arrest** cases, "[b]ecause the standard for probable cause is well settled, the question with respect to whether an unlawful arrest violated clearly established law is 'whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity.'" *Sialoi*, 823

F.3d at 1233 (quoting *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). See, *Sialoi* (no qualified immunity for false arrest where it was not reasonably arguable that arrest was lawful under the facts viewed in plaintiff's favor under general probable cause standards); *Reed v. Lieurance*, 863 F.3d 1196, 1207, f.n. 4 (9th Cir. 2017) (no qualified immunity where "the Fourth Amendment principles at issue [and the state law under which the deputy arrested the plaintiff] were all clearly established at the time," and "the factual disputes that preclude[d] a finding that, as a matter of law, Deputy Lieurance acted with probable cause also preclude[d] a finding that he had arguable probable cause").

The Ninth Circuit has "explained before that the responsibility for keeping abreast of constitutional developments rests 'squarely on the shoulders of law enforcement officials. Given the power of such officials over our liberty, and sometimes over our lives, this placement of responsibility is entirely proper.'" *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065–66 (9th Cir. 2006).

State statutes, specifically the California Penal Code, can place officials on fair notice of the unlawfulness of their conduct. *Hardwick*, 844 F.3d at 1120 ("Just as the Court in *Hope* used an ADOC regulation and a DOJ report to support its conclusion that the officials were on fair notice of the wrongfulness of their conduct, here, a pertinent state statute warns defendants . . . [of] the loss of immunity for such conduct.").

Additionally, when an officer violates a policy or training of his department, he is on notice that his conduct is unreasonable and is not entitled to qualified immunity. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (police department's "training materials" relevant to whether force was unlawful and whether a reasonable officer would have fair notice); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002) (no qualified immunity where officers violated regional and statewide police protocol); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1162, n. 7, 1168, n.9 (9th Cir. 2011) (no qualified immunity based on defendant's violation of California POST training standards).

Although courts have discretion to consider the two steps of the qualified immunity analysis in any order, "typically, taking the facts in the light most favorable to the plaintiffs, we first ask whether those facts demonstrate that the defendant police officers violated one or more of the plaintiffs' constitutional rights." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013). Here, because Plaintiff's state law claims also hinge on the answer to the first qualified immunity question, this Court should decide the steps in order.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT

### A.  Defendants are each liable for all rights they violated directly, or by setting in motion violations by each other, or as integral participants, or by failing to intervene in violations of rights by each other

 "The requisite causal connection [for § 1983] can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)

Alternatively, each defendant officer is liable as an integral participant to the arrest and collective use of force, as explained in *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n.12 (9th Cir. 2007):

> An officer's liability under *section 1983* is predicated on his 'integral participation' in the alleged violation. *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996). '[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation.' *Boyd, 374 F.3d at 780* [*Boyd v. Benton County,* 374 F.3d 773(9th Cir. 2004)]. But it does require some fundamental involvement in the conduct that allegedly caused the violation. *See id.* (holding that every officer who provided *armed backup* for another officer who unconstitutionally deployed a flash-bang device to gain entry to a suspect's home could be held liable for that use of excessive force because 'every officer participated in some meaningful way' in the arrest and 'every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flashbang was to be deployed').

Finally, "[p]ursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon ("Rodney King case")*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in part, rev'd in part,* 518 U.S. 81 (1996). *See also Cunningham v. Gates,* 229 F.3d 1271, 1289–90 (9th Cir. 2000) (recognizing officers' duty to intercede where they have an opportunity to stop violation of rights).

### B.  Plaintiff has properly pled that Defendants arrested him without probable cause

"'Probable cause' exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime."  Ninth Cir. Civil Jury Instruction 9.23 (rev'd 1/2017) (citing, *inter alia*, *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010)).  In analyzing whether an arrest lacked probable cause, "we look to the asserted crime for which the arrest took place." *Velazquez v. City of Long Beach*, 793 F.3d 1010, (9th Cir. 2015).  The probable cause analysis begins with the elements of the crime. *Id*.  On the face of Cal. Penal Code § 29805, it is clear that Plaintiff had not committed the

requisite misdemeanor that would bar him from owning firearms.  **As reasonably trained professionals, Defendants were expected to know the law that they were enforcing, regardless of what some DOJ database might say**.  See *Hardwick*, 844 F.3d at 1120.  To the extent Defendants did not recall which underlying offenses were included in § 29805, reasonable officers would have reviewed the statute before going to Plaintiff's home at 9:00 p.m. to seize his guns.  It was unreasonable for Defendants to not read the statute on which they were basing serious Fourth Amendment intrusions.  It is indisputable – and Defendants themselves figured it out within hours of jailing Mr. Malek – that there was no legal basis for Plaintiff's arrest and the seizure of his guns.  See FAC, ¶ 87.  Nothing prevented them from doing the reasonable investigation *before the arrest* that they did after the arrest.  *Id.*

"Under the objective reasonableness test …, the proper inquiry is whether in light of the facts and circumstances confronting the officers, it was objectively reasonable to conclude that [Malek]'s arrest for a violation of [Cal. Pen. Code § 29805] was supported by probable cause."  *Alford v. Haner*, 333 F.3d 972, 977 (9th Cir. 2003) (holding that there was no probable cause for arrest when officers "failed to read the clear language of the statute" that did not criminalize the plaintiff's conduct) (reversed on other grounds, *Devenpeck v. Alford*, 543 U.S. 146 (2004).  "Probable cause cannot be established by an erroneous understanding of the law.  While an officer may have reasonable suspicion or probable cause even where his reasonable understanding of the facts turns out to be mistaken . . . (citations omitted), we have repeatedly held that a mistake about the law cannot justify a stop, let alone an arrest under the Fourth Amendment."  *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004).  "'If an officer simply does not know the law, and makes a stop based on objective facts that cannot constitute a violation, his suspicions cannot be reasonable.'"  *Id.* (quoting *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2000)).  "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes--whether of fact or of law--must be *objectively* reasonable ….  Thus an officer can gain no Fourth Amendment advantage through a sloppy study of the law he is duty-bound to enforce."  *Heien v. North Carolina*, __U.S.__, 135 S.Ct. 530, 539-540 (2014).[3]  To the extent Defendants made a mistake of law, it was not a reasonable

---

[3]*Heien* addressed whether "a mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment."  135 S.Ct. at 534.  The Court answered, "yes."  *Id.*  The Court differentiated an ***arrest***: "Just as an individual generally cannot escape criminal liability based on a mistaken understanding of the law, so too the government cannot impose criminal liability based on a mistaken understanding of the law."  *Id.* at 540.  In that case, a police officer "could not issue a valid ticket by claiming he reasonably thought" the law criminalized something it did not.  *Id.*

1    mistake, and probable cause therefore was lacking.

2        To the extent Defendants arrested Plaintiff based on a mistake of fact, the arrest still lacked

3    probable cause.  Defendants' complete, unquestioned reliance on a stale, three-month old PPR that

4    contradicted a plain reading of the statute does not negate the fundamental lack of probable cause when as

5    a matter of law no crime was committed.  Defendants knew that the APPS database that generated the

6    PPR was notoriously inaccurate, and that their training and DOJ policy required them to double check that

7    information before acting on it.  (FAC, ¶¶ 37-48).[4]  "Officers 'have an ongoing duty to make appropriate

8    inquiries regarding the facts received or to further investigate if insufficient details are relayed.'"  *Lacey v.*

9    *Maricopa Cnty.*, 693 F.3d 896, 924 (9th Cir. 2012) (quoting *Motley v. Parks*, 432 F.3d 1072, 1081 (9th

10   Cir. 2005) (en banc)) (emphasis added); *see also Mendocino Evtl. Ctr. v. Mendocino Cnty.*, 192 F.3d

11   1283, 1293 n.16 (9th Cir. 1999) (holding that even where a police officer relies on information obtained

12   from fellow law enforcement officers, "this in no way negates a police officer's duty to reasonably inquire

13   or investigate these reported facts.  We have denied qualified immunity to police officers who had

14   indisputably relied on information obtained from other law enforcement officials, when we concluded that

15   they violated their duty to conduct further investigation.").

16       For many years, courts have required officers' reliance on criminal database information to be

17   reasonable.  In *Arizona v. Evans*, 514 U.S. 1 (1994), where the Supreme Court addressed whether the

18   exclusionary rule should apply to an unlawful arrest caused by a court clerk's data entry error in a

19   database, Justice O'Connor concurred to address the wider problem:

20       While the police were innocent of the court employee's mistake, they may or may not
21       have acted reasonably in their reliance *on the recordkeeping system itself*. Surely it would
22       *not* be reasonable for the police to rely, say, on a recordkeeping system, their own or
         some other agency's, that has no mechanism to ensure its accuracy over time and that
         routinely leads to false arrests, even years after the probable cause for any such arrest has
         ceased to exist (if it ever existed).

---

[4] Thus, Plaintiff has addressed the insufficiency noted in this Court's order on Defendants' first motion to dismiss that, "Malek does not point to allegations in the Complaint indicating that the Officers' reliance on the PPR was objectively unreasonable in this case," (Doc. 49, p. 12:7-8), and "without facts to suggest that it was unreasonable for the Officers to rely on the PPR generated by other California Department of Justice personnel, Malek has also not alleged that the Officers violated their duty to conduct further investigation."  *Id.*, at 13:6-9.  Still, this Court wrote that its ruling that Plaintiff had not sufficiently pled the absence of probable was "a close call," and that "[i]n the event Malek successfully alleges facts that the Officers' mistake of law was unreasonable, then the Court would not be able to determine that the Officers had probable cause to arrest Malek as a matter of law."  *Id.*, at 13:24-26.

This is saying nothing new. … In recent years, we have witnessed the advent of powerful, computer-based recordkeeping systems that facilitate arrests in ways that have never before been possible. The police, of course, are entitled to enjoy the substantial advantages this technology confers. They may not, however, rely on it blindly. With the benefits of more efficient law enforcement mechanisms comes the burden of corresponding constitutional responsibilities.

514 U.S. at 16-18 (O'Connor, J., concurring).

The rule in the Ninth Circuit is that officers' reliance on database information must be reasonable, and "officers may not rely on [such] information" if they have "received warnings about reliability or should have known that the database was flawed from its very design." *Willis v. Mullins*, 517 F.Supp.2d 1206, 1226 (E.D. Cal. 2007) (citing *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir. 2004)). See also, *Littlefield v. Viveros*, No. 1:06-cv-1530 OWW-DLB, 2007 U.S. Dist. LEXIS 89567 at *8-10; 2007 WL 4284864 (E.D. Cal. Dec. 4, 2007) (same); *Torres v. County of Madera*, NO. 1:10-cv-00670 LJO SKO, 2011 U.S. Dist. LEXIS 142098 at *23-24; 2011 WL 6141080 (E.D. Cal. Dec. 9, 2011) (same).

Here, due to the warnings Defendants' had received about the reliability of the APPS database, and their related training to confirm the accuracy and basis for any PPS from that system, Defendants did not reasonably rely on the facially incorrect information they received. As this Court suggested if this were the case (see footnote 4, above), Defendants lacked probable cause to arrest Plaintiff.

**Qualified Immunity.** Defendants lacked even arguable probable cause when their arrest was based on (1) information that reasonably trained professional officers would know was not a violation of Cal. Penal Code § 29805, and (2) their unreasonable reliance – without further investigation – on information from a database that they knew to be unreliable. "Qualified immunity thus boils down to whether it was reasonable for Defendants to rely on the information contained in the Parole Roster in order to determine if an individual is subject to a parole search condition." *Willis*, 517 F.Supp.2d at 1224; see also, *Torres, supra.,* and *Littlefield, supra.*, citing *Willis*. The Ninth Circuit required officers' reliance on database information to be reasonable in *U.S. v. Miquel, supra.* Reliance on information provided by other law enforcement officers "is only allowed when it is objectively reasonable." *Green v. CCSF*, 751 F.3d 1039, 1045 (9th Cir. 2014). It has long been true that there is also no qualified immunity where an officer's unreasonable mistake of fact results in a Fourth Amendment violation. *Torres v. City of Madera*, 648 F.3d 1119, 1228-29 (9th Cir. 2011) (see also cases cited therein).

By not confirming the APPS database information they received about Plaintiff, Defendants also

violated their own training and DOJ policy.  Officers' training and standards also placed them on notice of clearly established law.  See, *Drummond, supra, Headwaters, supra, and Young, supra.*

Contrary to Defendants' sophistry, Plaintiff's claims do not require Defendants to have done "legal research."  Statutory law, including the California Penal Code, can place officers on notice of clearly established law.  *Hardwick*, 844 F.3d at 1120.  "[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the law he is duty-bound to enforce."  *Heien*, 135 S.Ct. at 539-540.  Just as officers may not blindly rely on a facially invalid warrant, they may not blindly rely on database information that on its face is inconsistent with the plain terms of the statute they seek to enforce – especially when they also have information and training that that database is unreliable.  Similarly, in *Beier, supra.,* the Court denied qualified immunity for an arrest based on a purported violation of a personal protective order where officers simply relied on incorrect information conveyed by their dispatcher and did not read the order.  The *Beier* Court found "precisely analogous" cases clearly establishing that officers have a duty to read a search warrant before executing it.  354 F.3d at 1069.

Likewise, Defendants had a duty to read Penal Code § 29805 if they did not remember what it criminalized, and a duty to confirm the accuracy of the PPS from the notoriously inaccurate APPS database.  Defendants had "fair notice" that to invade Plaintiff's house at night, without a warrant, without exigency, then to arrest him and seize his guns, all based on their unconfirmed reliance on information that they knew to be unreliable, in violation of their training and DOJ policy, where the database information *on its face* did not state a violation of law, violates clearly established law.

**C.  Plaintiff has properly pled that Defendants' warrantless entry to his home was unlawful**

"'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quotation omitted). "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Welsh v. Wisconsin*, 466 U.S. 740, 742 (1984). "Our jurisprudence interpreting the Fourth Amendment has long recognized that police encounters at a person's dwelling in the middle of the night are especially intrusive. Indeed, the special vulnerability of the individual awakened at the privacy of his place of repose during the nighttime hours to face a nocturnal confrontation with the police was recognized in the common law that antedates our separation from England."  *U.S. v. Jerez*, 108 F.3d 684, 690 (7th Cir. 1997) (citing *Monroe v. Pape*, 365 U.S. 167,

210 (1961) (Frankfurter, J., dissenting) ("Night-time search was the evil in its most obnoxious form.").

Therefore, "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). See also, Doc. 49, MTD Order, p. 19:7-9 (recognizing warrantless searches and seizures in a home are "presumptively unreasonable"). "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo*, 533 U.S. at 31.

Defendants now claim two exceptions to the warrant requirement: the "at the door" exception of *United States v. Vaneaton*, 49 F.3d 1423 (9th Cir. 1995), and exigent circumstances.

### 1. Defendants did not arrest Plaintiff at his door or with probable cause

The "at the door" exception described in *Vaneaton, supra.*, and in *United States v. Santana*, 427 U.S. 38 (1976) and *United States v. Botero*, 589 F.2d 430, 432 (9th Cir. 1978), **requires** the officer to have had probable cause to arrest Plaintiff. As shown above, they did not.

In *Santana*, the defendant was "standing directly in the doorway" when he was arrested. 427 U.S. at 42. The Ninth Circuit has confirmed, post-*Vaneaton*, that the "at the door" exception does not apply to arrests made beyond the doorway. See *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 955 (9th Cir. 2000):

> While the officers were standing at the doorway, they sought to ask LaLonde, who was standing a few feet inside the apartment, some questions about a disturbing the peace complaint. The arrest took place only after the officers had crossed the threshold of the door and entered LaLonde's apartment. Thus the present case does not fall under the doorway exception. *See, e.g.*, *Harris v. New York*, 495 U.S. 14, 15-18, 109 L. Ed. 2d 13, 110 S. Ct. 1640 (1990) (warrantless arrest once inside the home violated *Payton* though officers might have been able to arrest individual at doorway)

Similarly, in *Santana*, the warrant requirement was triggered when the officers crossed the threshold of the defendant's home to arrest her inside. 427 U.S. at 42-43. In light of that entry, the Supreme Court ultimately relied on the exigent circumstances exception to justify the officers' warrantless entry. *Id*.

Here, Plaintiff Malek was "standing well within his home, some feet away from the front door's threshold" when he answered Defendants' knock (¶ 51), then he "closed the door slightly [and] stepped back further into his house" while asserting his rights to a warrant and to speak to his attorney. (¶ 55). Then, Defendants barged in, pushed Plaintiff backwards, and arrested him in his living room. (¶¶ 57-58). Like the person in *Lalonde*, Plaintiff Malek was always at least "a few feet inside" his house. The "at the door" exception cannot apply because not only did Defendants lack probable cause to arrest Plaintiff

1    Malek; they also did not arrest him at the door, but rather in his living room.

2        **Qualified Immunity**.  "[T]he Fourth Amendment has drawn a firm line at the entrance to the

3    house." *LaLonde,* 204 F.3d at 954 (citing *Payton*, 445 U.S. at 590 (1980)).  As another district court

4    recently found, following *LaLonde*, "[i]t is thus clearly established that law enforcement officers cannot

5    break the threshold of a home to detain or arrest an individual who is standing inside his home." *Quintero*

6    *v. City of Escondido*, No.: 15-cv-2638-BTM-BLM, 2017 U.S. Dist. LEXIS 147579 at *11-18; 2017 WL

7    4005345 (S.D. Cal. Sept. 11, 2017).

8        ## 2.   Defendants lacked exigent circumstances

9        The exigency exception derives from "the police officers' investigatory function; it allows them to

10   enter a home without a warrant if they have **both** probable cause to believe that a crime has been or is

11   being committed **and** a reasonable belief that entry is 'necessary to prevent . . . the destruction of relevant

12   evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law

13   enforcement efforts.'"  *Hopkins*, 573 F.3d at 763 (emph. added).  Again, probable cause was lacking here.

14   Even if the Defendants had probable cause, "[n]o amount of probable cause can justify a warrantless

15   search or seizure absent 'exigent circumstances.'"  *United States v. Johnson*, 256 F.3d 895, 907 (9th Cir

16   2000) (en banc).  "The exigent circumstances exception is premised on 'few in number and carefully

17   delineated' circumstances[.]"  *United States v. Struckman*, 603 F.3d 731, 743 (9th Cir. 2010).  Defendants

18   rely on (1) the need to prevent physical harm to the officers or other persons, and (2) the need to prevent

19   the imminent destruction of relevant evidence.  (Doc. 55, p. 13:15-18, citing *Struckman*, 603 F.3d at 743).

20   Defendants speculate that "[t]he officers could readily suspect that he was retreating into the house to

21   destroy or conceal evidence of gun ownership.  They could likewise suspect that he was retreating into the

22   home in order to arm himself for violent resistance."  (Doc. 55, p. 14:5-7).  Reasonable officers would

23   suspect that, most likely, Plaintiff backed up because Defendants lacked a warrant and had threatened to

24   retaliate against him by taking him to jail if he insisted on his right to a warrant.

25       Importantly, "[t]he government bears the burden of showing specific and articulable facts to

26   justify the finding of exigent circumstances."  *Struckman*, 603 F.3d at 743.  Indeed, "conjecture about

27   'what may or might have happened' is insufficient to satisfy the government's 'heavy burden' of proving

28   exigent circumstances."  *Struckman*, 603 F.3d at 744; *see also Bailey v. Newland*, 263 F.3d 1022, 1033

     (9th Cir. 2001) (government's burden "is not satisfied by mere speculation that the exigency exists").

In the *LaLonde* the Court rejected officers' claimed exigent circumstances based on information that Mr. Lalonde owned a rifle, that he was "hostile to law enforcement," and a neighbor said "he might be willing to use the weapon."  204 F.3d at 956.  Police in *Lalonde* failed to meet their "heavy burden" to demonstrate an urgent need that might justify a warrantless search or arrest, where according to the plaintiff, Mr. Lalonde stood peacefully at his doorway talking to officers before they grabbed him, he had not resisted or given officers cause to grab him, and he denied fleeing into his kitchen.  *Id.*, at 956-58. Moreover, **"[t]he mere fact that a person owns a rifle and does not like law enforcement officials does not in itself allow police officers to enter the person's home and seize him simply because he is unwilling to step into the public domain for questioning, even if probable cause exists to believe that some offense has been committed."**  *Id.*, at 958, n. 16.[5]

Defendants' claimed exigency here is not only speculative, it is unreasonable.  Defendants knew that Plaintiff Malek has no history of violent acts, and he had simply, politely asserted his Constitutional rights.  He had not done or said anything threatening to them.  To suspect that he would go inside to arm himself is pure conjecture.  They further had no basis to suspect he would destroy his valuable, registered, and lawfully possessed firearms – which are not easily destroyed anyway.  And, the tip they acted on was three months old.  The Defendants essentially are asking this Court to find exigency simply because Plaintiff asserted his Second and Fourth Amendment rights.  And, if Plaintiff and Defendants both have plausible arguments based on the facts, then a motion to dismiss must be denied.  *Starr*, 652 F.3d at 1216.

---

[5] **The mere presence of a firearm in a house, without more, does not allow for a warrantless entry.** *See, Payton,* 445 U.S. at 587-588 ("absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.").  For example, in *Mahrt v. Beard*, No. 1:14-CV-1696 NJV, 2015 U.S. Dist. LEXIS 83516 (N.D. Cal. June 26, 2015), deputies responded to a house in response to a report of an argument about a gun.  *Id.* at *15.  The deputies did not report observing any type of altercation, receiving reports of a physical altercation, or observing any signs of violence or any facts that would have reasonably lead them to believe that an injured person requiring emergency assistance was inside.  *Id.* at *16.  The court remarked that "[e]very report of a domestic argument does not create an emergency exigent circumstances justifying a warrantless search.  Nor does the officers' speculation that the case could have involved a domestic violence situation justify, on its own, a warrantless search."  *Id.*  "Similarly, it is not per se illegal to possess a gun in this country, nor is it illegal to argue about one.  Thus, the mention of a deadly weapon in a domestic argument, without more, does not establish a basis for a warrantless search."  *Id.* (citing *Payton, supra.*). See also *Ohlsen v. Cnty. of San Joaquin*, No. 2:06-cv-2361-GEB, 2008 U.S. Dist. LEXIS 44566 at *5-6 (E.D. Cal. June 4, 2008) ("Plaintiff's access to a gun and refusal to come outside does not alone create exigent circumstances justifying the officers' warrantless entry.").

Next, Defendants' attempt to "knock and talk" with Plaintiff at his door itself was improper, since the officers went over at 9:00 pm, in the dark, when Plaintiff and his wife had a reasonable expectation of privacy from visitors at their front door. *U.S. v. Lundin*, 817 F.3d 1151, 1159 (9th Cir. 2016) (finding nighttime "knock and talk" improper in part, because "unexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours") (citing *United States v. Perea-Rey*, 680 F.3d 1179, 1188 (9th Cir. 2012).

Furthermore, "exigent circumstances cannot justify a warrantless search when the police 'create the exigency by engaging … in conduct that violates the Fourth Amendment.'" *Lundin*, 817 F.3d at 1158 (citing *Kentucky v. King*, 563 U.S. 452 (2011); see also *U.S. v. Eberle*, 993 F.Supp. 794, 800 (D. MT 1998) ("[p]olice officers may not take actions to create an exigency and use that to justify a warrantless entry to the home") (citing *U.S.* v. *Richard,* 994 F.2d 244, 249 (5th Cir. 1993) ("exigent circumstances did not arise until the agents announced themselves") and *U.S. v. Johnson*, 12 F.3d 760, 764 (8th Cir. 1993)). In *Lundin*, it was officers' intrusion onto Mr. Lundin's curtilage to arrest him without a warrant that caused Mr. Lundin to flee out the back, in turn leading officers to pursue him. The *Lundin* court found that any "exigency" was created by officers' unlawful attempted warrantless arrest at the doorway and therefore officers' entry into the backyard and home were unlawful, and the guns the officers found in the house were properly suppressed. 817 F.3d at 1158. Likewise here, Defendants created any exigency by their own choice to come to Plaintiff's home at 9:00 p.m., without a warrant, to effectuate a three-month-old tip from a notoriously unreliable database, then threaten retaliation for Plaintiff's exercise of rights.

Finally, "'an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.'" *Johnson*, 256 F.3d at 908 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)). Thus, a court "should be hesitant to find exigent circumstances 'when the underlying offense for which there is probable cause to arrest is relatively minor.'" *United States v. Nora*, 765 F.3d 1049, 1055 (9th Cir. 2014). Here, the offense Defendants suspected Plaintiff of committing was § 29805, a wobbler, meaning it could be charged as a felony or a misdemeanor. Such a violation cannot be considered a serious enough crime to justify a warrantless entry into Plaintiff's home at night based on a stale, three-month-old tip from a known, unreliable database.

Defendants' generalized authority is of no avail to them. *Santana* involved "a true 'hot pursuit,'" where the defendant, holding a bag, retreated from her doorway into her vestibule at the mere sight of

police from 15 feet away, minutes after they had done a controlled drug purchase at her home.  427 U.S. at 40.  And, Defendants fail to mention that the exigent circumstances found prior to *LaLonde* in *United States v. Lindsey*, 877 F.2d 777, 781 (9th Cir. 1989), were due to the presence of both "guns **and bombs**," and officers' reasonable belief that the drug dealer would use the "guns and bombs to resist arrest."

**Qualified Immunity.**  The clearly established law, cited above, was sufficient to provide Defendants "fair notice" that they lacked exigent circumstances to overcome the powerful presumption that they needed a warrant to enter Plaintiff's home.

### D.   Plaintiff has properly pled that Defendants' pre-warrant search was unlawful

Plaintiff's claim for unlawful pre-warrant search is based on Defendants' illegal entry into Plaintiff's home without a warrant or exigent circumstances, and without probable cause.  The case on which Defendants rely, *Maryland v. Buie*, 494 U.S. 325, 327 (1990), is plainly inapplicable as that protective sweep was done incident to a lawful arrest, and inside a house pursuant to an arrest warrant.

**Qualified Immunity.**  *Maryland v. Buie, supra.,* rendered it clearly established that a protective sweep for weapons requires a lawful arrest and a lawful basis for officers to be inside a house.  *See also, Payton,* 445 U.S. at 587-588 ("absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.").

### E.   Plaintiff has properly pled that Defendants obtained the warrant by judicial deception

To state a claim of Judicial Deception resulting in the violation of Fourth Amendment rights, "a §1983 plaintiff must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause."  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).  Even at summary judgment "on a claim of judicial deception, a § 1983 plaintiff need not establish specific intent to deceive the issuing court."  *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).  "Whether the alleged judicial deception was brought about by material false statements or material omissions is of no consequence."  *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).  "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw."  *Id.*  "To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning."  *Id.* (quotations omitted).  "Accordingly, a Fourth Amendment violation occurs where the

affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Id.*

"Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999). Questions involving such state of mind generally are factual issues inappropriate for resolution before trial, even by summary judgment. *Id.*

Plaintiff sufficiently alleged that all officers, under the supervision of Defendant Sandri, caused or permitted the factually false warrant to be drafted and presented to a judge. (FAC, ¶¶ 67, 77-79, 88). Defendant Green's false statement, that supervisor Sandri ordered, that Mr. Malek was prohibited from owning or possessing firearms under P.C. § 29805 was the entire basis for probable cause, and obviously was material. (¶ 77). Defendant Green made those statements "deliberately or with reckless disregard for the truth." *Id.* Reasonable officers would have known the warrant was facially invalid. (¶ 87 and ¶¶ 17-46). Nothing more is required.

**Qualified Immunity.** Where, as here, an officer has "'submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements,'" then "'he cannot be said to have acted in a reasonable manner,' and the shield of qualified immunity is lost." *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991) (citations omitted).

### F.  Plaintiff has properly pled that Defendants collectively subjected him to excessive force

The fact that Defendants lacked probable cause to arrest Plaintiff and lacked a warrant or exigent circumstances to be inside his home totally changes the calculus for the reasonableness of handcuffing Plaintiff for nine hours. A jury could find that Defendants had no right to use any force to accomplish an *unlawful* arrest and search. "Where officers are presented with circumstances indicating that no crime was committed, the 'severity of the crime at issue' factor is necessarily diminished as a justification for the use of force—although, as our cases have held, the force used may still be reasonable if the other *Graham* factors taken together favor that conclusion." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015). *See Graham*, 490 U.S. at 396. Our Fourth Amendment jurisprudence has long recognized that the *right* to make an arrest or investigatory stop necessarily carries with it the right to use

1   some degree of physical coercion or threat thereof to effect it.") (emphasis added).  If police have no right

2   to arrest, no right to detain for a lawful house search, and face no aggressive resistance to their lawful

3   presence, then there is no need to use any force.  *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 417–418, and

4   n.5 (9th Cir. 2003) ("Thus, where there is no need for force, *any* force used is constitutionally

5   unreasonable.").  Indeed, part of this Court's reasoning for previously granting dismissal with leave to

6   amend of Plaintiff's excessive force claim was that "the Officers had probable cause to arrest Malek."

7   (Doc. 49, p. 28:22-23).

8          The *Muehler v. Mena*, 544 U.S. 93, 100 (2005), line of cases involving handcuffing during the

9   execution of a lawful search warrant do not help Defendants where Defendants' very presence in

10   Plaintiff's home was unlawful and the warrant was unlawfully procured.  And, even under *Muehler*, any

11   force or handcuffing used during a lawful search still must be reasonable under the Fourth Amendment.

12   "A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful,

13   degrading, or prolonged, or if it involved an undue invasion of privacy."  *Liston*, 120 F.3d at 978.  Mr.

14   Malek's arrest from 9:00 p.m. to 1:00 p.m the next day when he was released from jail, was painful,

15   embarrassing, long, and invasive, and as supported by facts alleged in the FAC.

16          Beyond the lack of a need or legal basis for any handcuffing, Defendants also subjected Plaintiff

17   to excessively tight and painful handcuffing, which also constitutes excessive force in this circuit.  See

18   *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("well-established that overly tight

19   handcuffing can constitute excessive force"); *LaLonde*, 204 F.3d at 960 ("A series of Ninth Circuit cases

20   has held that tight handcuffing can constitute excessive force.).  This Court previously recognized this

21   clearly established law, but found that Plaintiff had not pled that the handcuffs were too tight.  (Doc. 49,

22   p. 29:20-27).  Now he has.  See FAC, ¶¶ 71-76.  This was not "routine handcuffing."  The FAC now

23   explains Defendants' abnormal handcuffing procedure (overly tight cuffs; refusal to use two sets of cuffs;

24   and refusal to cuff Plaintiff in front upon complaints of pain), as well as overly tight cuffs and refusal to

25   loosen them after Plaintiff complained, all done spitefully and in retaliation for his exercise of rights.  *Id.*

26          Defendants' new argument that Plaintiff's excessive force claim requires evidence of physical

27   injury from handcuffing is incorrect.  The district court in *Smith v. Sergent*, No. 2:15-cv-0979 GEB, 2017

28   U.S. Dist. LEXIS 159265 at *16-18; 2017 WL 4284659 (E.D. Cal. Sept. 27, 2017) rejected that same

argument, finding that the Ninth Circuit recently confirmed "that a plaintiff need not support a claim of

1   excessive force due to tight handcuffs with proof of visible physical injury. An allegation that the

2   handcuffs caused 'unnecessary pain,' is sufficient." *Id.*, at \*16-17 (citing *Thompson v. Lake*, 607 F. App'x

3   624, 625-26 (9th Cir. 2015) (citing *Meredith v. Erath*, 342 F.3d 1057, 1060, 1062-63 (9th Cir. 2003) and

4   *LaLonde*, 204 F.3d at 952, 960)).  "It appears that most courts in this circuit have held that a plaintiff

5   attempting to prove excessive force must show either a demonstrable injury or that he complained about

6   the handcuffs being too tight and was ignored." *Id.*, at \*17 (citing numerous cases).  Plaintiff Malek

7   clearly pled that Defendants allowed the cuffs to cause him unnecessary and prolonged pain after ignoring

8   his complaints that they were too tight.  See FAC, ¶¶ 71-76.

9       **Qualified Immunity.**  *Thompson, LaLonde* and *Meredith* all predate the Malek incident, and

10  clearly establish that officers' refusal to loosen overly tight, painful handcuffs can constitute excessive

11  force.  Those cases provide Defendants with the "fair notice" that the Ninth Circuit has required from

12  prior cases after *White v. Pauly*.  See qualified immunity standards, p. 7, above.  Further, *Velazquez,*

13  *supra.*, provides Defendants with fair notice – as if they needed it – that the need for any force is missing,

14  and therefore they do not have the right to subject a person to nine hours of painful handcuffing, during an

15  unlawful arrest and unlawful search of the person's home.

16      The Supreme Court has confirmed that traditional principals of causation support damages for

17  injuries caused by even a lawful use of force that flows from an unlawful entry to a residence.  *County of*

18  *Los Angeles v. Mendez*, __U.S. __, 137 S.Ct. 1539 (2017).  The Court explained: "'[W]hen §1983

19  plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily

20  determined according to principles derived from the common law of torts.'"  137 S.Ct. at 1548 (quoting

21  *Memphis Community School Dist.* v. *Stachura*, 477 U. S. 299, 306, (1986)).  "Thus, there is no need to

22  dress up every Fourth Amendment claim as an excessive force claim. For example, if the plaintiffs in this

23  case cannot recover on their excessive force claim, that will not foreclose recovery for injuries

24  proximately caused *by the warrantless entry*."  *Id.*

25      **G.  Plaintiff has properly pled that Defendants unlawfully retaliated for his exercise of rights**

26      "The First Amendment protects a significant amount of verbal criticism and challenge directed at

27  police officers." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987).  The Supreme Court has noted that

28  "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest

    is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.*  "In

this Circuit, an individual has a right 'to be free from police action motivated by retaliatory animus,'" even if there was also probable cause for the police action. *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (*citing Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006)). But a lack of probable cause for an arrest raises a "strong inference" that an officer "was motivated by retaliatory animus and that it was a but-for cause of his actions." *Lacey*, 693 F.3d at 917.

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) the defendant's conduct "would chill a person of ordinary firmness from future *First Amendment* activity," and (2) the defendant's "desire to chill his speech was a but-for cause of their allegedly unlawful conduct." *Ford*, 706 F.3d at 1193 (citations omitted).

Here, the retaliation for Plaintiff's exercise of rights could not be more clear. Defendants told Plaintiff that he could either give up his firearms voluntarily, in which case Defendants **would not take him to jail**, **or** if he insisted upon exercising his right not to have his firearms seized without a search warrant, the incident would be prolonged and Defendants **would arrest him and take him to jail** – which they did when he asserted his rights. (¶ 54). "Because Plaintiff MALEK did not acquiesce to Defendants SANDRI, GREEN, and FAVELA's desire that he "do things the easy way" by voluntarily surrendering his lawfully possessed firearms, and because Plaintiff MALEK insisted on a search warrant, and vocally challenged Defendants' assertion that he was prohibited from possessing firearms, Defendants punished him for his 'defiance' by forcefully entering his home, arresting him, painfully handcuffing him for the duration of the time it took to obtain a search warrant (about nine hours), subjecting him to painful and degrading treatment during that time, and then taking him to jail." (¶ 56). This is stronger than the evidence that the Ninth Circuit recently held stated a clearly established First Amendment retaliation claim. See *Sharp v. Cnty. of Orange*, 871 F.3d 901, 919 (9th Cir. 2007) (clearly established retaliation claim where officer said, "If you weren't being so argumentative, I'd probably just put you on the curb.")

"Retaliatory intent can be demonstrated through either direct or circumstantial evidence. . . As noted by the Ninth Circuit, '[d]irect evidence of improper motive . . . will only rarely be available.'" *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1112 (N.D. Cal. 2011) (*citing Mendocino Envt'l Center,* 192 F.3d at 1302. Importantly, questions concerning a defendant's state of mind are typically factual issues inappropriate for resolution by the court, and a plaintiff need not offer "clear and convincing evidence" concerning the defendant's state of mind at this stage. *Id.* (*citing Braxton-Secret v. Robins Co.*, 769 F.2d

528, 531 (9th Cir. 1985) at 1232).

Plaintiff claims that he engaged in several forms of protected speech and expressive conduct, including: (1) informing Defendants they were mistaken in their belief that he was prohibited from owning firearms; (2) refusing to give Defendants his lawfully possessed and registered firearms; (3) requesting that Defendants obtain a warrant; and (4) partially closing the door while informing Defendants they needed a warrant and he wanted to speak with an attorney.  (Doc. No. 1, ¶ 24-26).  All of this speech and conduct involves fundamental rights protected by the Second and Fourth Amendments.[6] In response, without probable cause to arrest him, Defendants Green and Sandri barged into Plaintiff's home, arrested him as threatened, and subjected him to painful, overly tight handcuffing for nine hours despite his complaints of pain, then took him to jail – when even Defendants had told him all of that could have been avoided had Plaintiff just surrendered his protected rights.

**Qualified Immunity.**  "Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech."  *Ford*, 706 F.3d at 1195.  And, in *Morales v. Fry*, 873 F.3d 817, 826 (9th Cir. 2017), a retaliatory use of force (there pepper spray) violated clearly established law, and in addition, lacking a legitimate purpose, it "would likely constitute an 'obvious case' of excessive force where *Graham*, and *Garner* alone offer a basis for decision."  *Id.*

**H.  Plaintiff has properly pled that Defendants violated the Bane Act**

The California Court of Appeal recently released an opinion with the most comprehensive analysis of the Bane Act yet, *Cornell v. City and County of San Francisco*, __Cal.App.4th__, 2017 Cal.App. LEXIS 1011, 2017 WL 5495096 (Cal. Ct. App. Nov. 16, 2017), noting that the Bane Act (Cal. Civil Code § 52.1) has been "the source of much debate and confusion" in federal district courts, and "[w]e have endeavored to provide some clarity." 2017 Cal.App. LEXIS 1011 at *55.  *Cornell* explained that the California Supreme Court "declined to place added restrictions on the scope of section 52.1" beyond its plain language (citing *Venegas v. County of Los Angeles,* 32 Cal.4th 820 (2004)), and therefore, "[w]e see no reason that, *in addition*, the required 'threat, intimidation or coercion,' whatever form it may take, must also be transactionally 'independent' from a properly pleaded—and proved—unlawful arrest." *Cornell* at *53-54.  *Cornell* thoroughly analyzed the main case upon which Defendants herein rely,

---

[6] Plaintiff does not bring a stand-alone Second Amendment claim.  Rather, Defendants retaliated against Plaintiff in violation of the First Amendment for his assertion of Second and Fourth Amendment rights.

*Shoyoye v. County of Los Angeles,* 203 Cal.App.4th 947 (2012), limiting *Shoyoye* to its narrow facts as "a jail overdetention case that began with a lawful arrest." *Cornell* at *48-56. Based on review of California Supreme Court precedent, "we view the second step of the court's Section 52.1 analysis in *Shoyoye*—its independent from inherent coercion test—as inapplicable where, as here, a Bane Act plaintiff pleads and proves a constitutionally unlawful arrest." *Cornell* at *48.

*Cornell* also "agree[d] that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1," (at *51), and cited a long list of federal district court cases that properly found **"there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force."** *Cornell* at *58, f.n. 31 (emphasis added). *Accord*, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–06 (9th Cir. 2014) ("[T]he elements of the excessive force claim under §52.1 are the same as under § 1983.") (citation omitted). And, at least as to the excessive force claim, *Chaudhry* is controlling.

*Cornell* explained that coercion can be proven from any intentional violation of rights. *Cornell* at *56-59. That analysis is also consistent with *Simmons v. Superior Court of San Diego County*, 7 Cal. App. 5th 1113, 1126 (2016), where the Court held that the "threat, intimidation, or coercion" under the Bane Act need not itself be a violation of rights, but can be satisfied even by lawful conduct that is threatening, intimidating, or coercive. In *Simmons*, the violation of rights was an unlawful strip search; the coercion element was satisfied by an inherently coercive **lawful** arrest. *Id.* at 1126–27. And earlier, *Bender v. County of Los Angeles,* 217 Cal.App.4th 968, 978 (2013) established that where an arrest is unlawful *and* excessive force is used in effectuating it, there is coercion.

Here, Plaintiff has alleged multiple, intentional[7] violations of rights. Alone, or in combination, they satisfy the Bane Act's requirements.

### I.   Defendants do not have state law immunity from Plaintiff's state law claims

Defendants do not challenge that Plaintiff's state law claims for battery, false arrest, and

---

[7] Ninth Circuit Model Civil Jury Instruction 9.20, which applies to both false arrest and excessive force, already requires that "in seizing the plaintiff's person, [*name[s] of same person[s]*] acted intentionally;" … "[A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, the plaintiff must prove that the defendant intended to [*insert the factual basis for the plaintiff's claim*]. It is not enough to prove that the defendant negligently or accidentally engaged in that action. But while the plaintiff must prove that the defendant intended to act, the plaintiff need not prove that the defendant intended to violate the plaintiff's Fourth Amendment rights.].]"

1  negligence can be proven by their constitutional violations.  See, *Robinson v. Solano Cnty.*, 278 F.3d

2  1007, 1016 (9th Cir. 2002) (en banc); *Blankenhorn,* 485 F.3d at 488.  Generally California state law

3  immunities do not apply to claims arising from excessive force or false arrest either.  *Id.*

4      After this Court denied Defendants' immunity claims in the first round (see doc. 49, pp. 40-43),

5  Defendants re-raise claimed immunity under only Penal Code §§ 847(b), 835, and Gov. Code § 820.4.

6      This Court's analysis of § 847(b) was confirmed in the *Cornell* Court's comprehensive review of

7  that provision and its legislative history.  *Cornell* at *31-34.  "California courts speak of 'reasonable

8  cause' and 'probable cause' interchangeably," (at *31), and based in part on its legislative history,

9  §847(b) does not add any immunity whatsoever.

10      Any immunity under Cal. Penal Code § 835 or Cal. Gov. Code § 820.4 is meaningless here,

11  because it tracks the fate of the federal claims for excessive force and false arrest.  (Doc. 49, pp. 41-42).

12  If Defendants acted "unreasonably" under the Fourth Amendment, then they also acted without due care.

13  See, *Robinson, supra., Blankenhorn, supra.*

### J.  Defendants' remaining issues raised in their motion are meritless

14      It is premature to dismiss "Doe" defendants before Defendants have even answered or produced a

15  single disclosure.  Doe pleading is permissible.  *Provencio v. Vazquez*, 258 F.R.D. 626, 632 (E.D. Cal.

16  July 29, 2009) (citing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988).

17      The facts in the FAC ¶ 9 that Defendants have withheld documents, videos, and other factual

18  information from Plaintiff are properly pled and considered, especially when Defendants claim they lack

19  "fair notice" of the factual basis for Plaintiff's claims when they themselves are concealing such facts.

20      Plaintiff's request for "joint and several" relief against Defendants is not seeking vicarious

21  liability.  "Joint and several liability requires that a tortfeasor whose negligence was a proximate cause of

22  an indivisible injury remain liable for *the total* amount of damages, regardless of comparative fault."

23  *General Motors v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993).  In a civil rights case, "[j]oint and several

24  liability provides a plaintiff flexibility to recover up to the full extent of his injuries against any

25  concurrently culpable defendant, which matters, if, for example, a defendant turns out to be 'impecunious

26  or otherwise immune from suit.'"  *Hoa v. Riley*, 78 F.Supp.3d 1138, 1154-55 (N.D. Cal. Jan. 26, 2015).

### IV.    CONCLUSION

27      For all of the foregoing reasons, Defendants' motion should be denied in its entirety.

28

Dated:  December 14, 2017            HADDAD & SHERWIN


                                    */s/ Michael J. Haddad*
                                    _____
                                    MICHAEL J. HADDAD
                                    Attorneys for Plaintiff