UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POURYA MALEK,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFERY GREEN, et al.,<br><br>    Defendants. | Case No. 17-cv-00263-BLF (VKD)<br><br>**ORDER RE JOINT DISCOVERY LETTER BRIEFS RE TIMING OF PRODUCTION OF BODY CAMERA VIDEOS AND DEPOSITIONS OF THE MALEKS**<br><br>Re: Dkt. Nos. 74, 75 |

On August 3, 2018, the parties filed two joint discovery letters. One discovery letter concerns a dispute about the timing of defendants' production of body camera videos created by defendants Jeffrey Green, Lance Sandri, and Elisardo Favela during the arrest and search of plaintiff Pourya Malek on February 4, 2016. Dkt. No. 74. The other discovery letter concerns defendants' request for a stay of discovery pending the return to the United States of Mr. Malek and his wife, or for an order compelling the Maleks to return to the United States immediately for depositions. Dkt. No. 75.

The Court asked for additional information regarding the dispute concerning the Maleks' depositions, which the parties provided on August 14 and 16, 2018. Dkt. Nos. 77, 78. The Court held a hearing on both disputes on August 22, 2018.

Having considered the parties' joint submissions and the arguments of counsel, the Court orders defendants to produce the body camera videos without delay, and denies defendants' request for a stay of discovery or an order compelling the Maleks' immediate return to the United States. As explained below, the Court orders that defendants' depositions will not take place until

after completion of the Maleks' depositions.

## I. PRODUCTION OF BODY CAMERA VIDEOS

Mr. Malek seeks the production of videos from the body cameras worn by defendants during their arrest and search of Mr. Malek on February 4, 2016. Dkt. No. 74-1 at 2–3 (Request for Production No. 1(h)); Dkt. No. 52 ¶ 50. The parties do not dispute that the videos are discoverable, and defendants do not object to their production. *See* Dkt. No. 74 at 1, 3–5. The only dispute is whether defendants may delay production of the videos until after they take the depositions of Mr. Malek and his wife. *Id.*

Mr. Malek contends that the body camera videos are highly relevant evidence of the incident that is the subject of his action, and that there is no good reason to delay their production. In fact, Mr. Malek contends that he and his wife should not have to sit for deposition until the videos have been produced and they have had an opportunity to view them. *Id.* at 1, 3.

Defendants agree that the body camera videos are highly relevant evidence, but they argue that permitting Mr. Malek and his wife to view the videos in advance of their depositions will prevent defendants from obtaining the Maleks' unrefreshed recollections of the incident and will permit the Maleks to tailor their testimony to the videos in a manner that will prevent defendants from proving that Mr. Malek's description of what occurred is false, or will inspire Mr. Malek "to allege new 'off camera' torts that cannot be disproven by the videos." *Id.* at 4–5.

Federal Rule of Civil Procedure 26(d)(2) provides that, unless the Court orders otherwise for the parties' and witnesses' convenience and in the interests of justice, discovery may proceed in any sequence, and discovery sought by one party does not require any other party to delay its own discovery. Here, both sides effectively seek an exception to the normal practice: the Maleks seek to avoid deposition until after the videos have been produced, and the defendants seek to avoid producing the videos until after the Maleks' depositions. Further complicating matters is defendants' concern that Mr. Malek and his wife have used self-help to ensure that discovery is sequenced according to their preference, not defendants'. *See infra* Section II.

There is nothing inherently unfair or prejudicial about a witness testifying to a refreshed recollection of events that occurred months or even years before his or her deposition. Indeed, it is

2

generally highly desirable for a witness to testify accurately rather than inaccurately to matters once known to the witness, and if a faulty recollection is refreshed, the interests of justice are certainly not disserved. *See Rivera v. NIBCO, Inc.*, 384 F.3d 822, 824 (9th Cir. 2004) ("[T]he broad right of discovery is 'based on the general principle that litigants have a right to every man's evidence, and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth.'") (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993); internal quotation marks omitted); *United States v. Meyer*, 398 F.2d 66, 71 (9th Cir. 1968) (noting that the "purposes served by discovery [are] to encourage settlements, to avoid surprise, to permit effective cross-examination and rebuttal, and, basic to all others, to elicit truth essential to correct adjudication") (internal quotation marks omitted). In these circumstances, the only benefit gained from obtaining a witness's unrefreshed recollection is that, if the witness's recollection is inconsistent with other evidence, a party seeking to challenge the witness's credibility may use that inconsistency against him or her. But even if such impeachment serves the strategic interests of one party, it hardly seems in the interests of justice to *require* a witness to testify to his or her unrefreshed recollection so that he or she can be impeached at trial. *See Cornell v. Jim Hawk Truck Trailer, Inc.*, 297 F.R.D. 598, 601 (N.D. Iowa 2013) ("[T]he claim that it is important to obtain a witness's 'unrefreshed' recollection is not even remotely self-evident.").

Here, defendants say that if Mr. Malek is permitted to view the videos in advance of his deposition, "[d]efendants will lose the ability to determine with any certainty which facts plaintiff remembers correctly, which facts plaintiff remembers incorrectly, and which facts plaintiff doesn't remember at all." Dkt. No. 74 at 4. However, defendants do not explain how Mr. Malek's testimony based on his unrefreshed recollection (as opposed to testimony based on refreshed recollection) is relevant to any issue on the merits in the case. Instead, defendants candidly acknowledge that they hope to challenge Mr. Malek's credibility by showing his recollection of events occurring more than two years is not accurate. *Id.*

Mr. Malek's first amended complaint contains detailed allegations of what occurred on February 4, 2016. *See* Dkt. No. 52 ¶¶ 50-89. Defendants contend that some of these allegations are false, and that the videos prove that they are false. They argue that by viewing the videos

3

before their depositions, the Maleks will have the means and motivation to change the story detailed in the first amended complaint to a different story that better matches what is shown on the videos. Mr. Malek objects that there is no basis for defendants' assumption that he or his wife will testify falsely or tailor their testimony in the manner defendants describe.

At the hearing, the Court questioned defendants regarding whether there was any evidence or information to support their argument that the Maleks were likely to testify falsely, apart from defendants' contention that certain allegations in the first amended complaint are false. Defendants responded that Mr. Malek already changed his story when he amended his complaint following defendants' first motion to dismiss. Mr. Malek disputed this characterization of his pleading. The Court has reviewed the original complaint and the first amended complaint. The amendments appear responsive to the deficiencies the Court noted when dismissing the original complaint. They provide additional factual support for the conclusory allegations the Court found insufficient, but do not appear to be a wholesale revision of Mr. Malek's theory of the case. *Compare* Dkt. No. 49 at 10–13 (discussing the lack of facts in the complaint supporting plaintiff's conclusory assertion of unreasonable mistake of law with respect to his arrest) *and* Dkt. No. 49 at 26 (permitting amendments to add factual allegations raising a plausible inference that defendants' conduct went beyond the scope of a permissible "knock and talk") *with* Dkt. No. 52 ¶¶ 18-46 (providing factual background on the California Department of Justice's training, policies, and procedures with respect to the Armed Prohibited Persons System database and Prohibited Person Reports and pleading that, in light of that background, defendants acted objectively unreasonably) *and* Dkt. No. 52 ¶¶ 51, 57-58 (stating that plaintiff was "well within his home, some feet away from the front door's threshold" when opening the door, and discussing plaintiff's and defendants' relative locations within plaintiff's home).

In addition, defendants expressed concern that because the videos have certain gaps, if the Maleks know in advance where the gaps are, they will be inspired to fill in the gaps with false testimony about what occurred. When pressed on the nature of the gaps, however, defendants acknowledged that the video of one of the critical events—defendants' entry into the Maleks' home—does not have gaps. Defendants also acknowledged that with respect to another critical

4

event—the handcuffing of Mr. Malek using a single set of handcuffs—the video shows when and how defendants switched the restraints to two sets of handcuffs, and the gaps correspond to the occasions on which Mr. Malek used the restroom, during which time he was not handcuffed at all. Dkt. No. 83 at 21:57–25:48.

Considering defendants' presentation both in the discovery letters and at the hearing, the Court is not persuaded that there is any reason to assume the Maleks will testify falsely, or that the video evidence in this case is particularly vulnerable to the "tailoring" concern expressed by defendants. *Cornell*, 297 F.R.D. at 601 ("[C]ourts will not assume that a witness will testify untruthfully absent some specific demonstration of fact pointing to that risk."). Rather, by defendants' account, the videos are compelling evidence that the incident did not happen as Mr. Malek says it did in his first amended complaint. If that is the case, defendants advance the ball by disclosing to Mr. Malek in discovery the evidence that shows he lacks support for his claims. The Court is also not persuaded that the Maleks would or could effectively change their stories after seeing the videos, without risking a charge that their new story conflicts with the old story in the first amended complaint. Nor is it plausible to suggest that Mr. Malek will be free at this late date to amend his complaint further to add new torts based on facts he could have pled at the beginning of his case.

Accordingly, the Court finds that defendants have not shown good cause for delaying the production of the body camera videos of the arrest and search of Mr. Malek. Defendants shall produce the videos without further delay.

## II. DEPOSITIONS OF THE MALEKS

On May 3, 2018, plaintiff's counsel learned that the Maleks intended to leave the country for an extended vacation through approximately September 2018. Dkt. No. 78 ¶ 7. On May 30, 2018, the Court issued an order on defendants' motion to dismiss. As of that date, it was clear to all parties that the stipulated stay of discovery would be lifted on June 29, 2018. Dkt. No. 67 at 37.

On June 4, 2018, defendants' counsel contacted plaintiff's counsel to confer on dates for the Maleks' depositions. Dkt. No. 77, Ex. A. Two days later, on June 6, 2018, the Maleks left the

1 country. Dkt. No. 78 ¶ 8. Plaintiff's counsel did not inform defendants' counsel that the Maleks intended to leave the country for an extended period of time in advance of their departure. He advised defendants' counsel that the Maleks had already left the country for an extended period of time on June 19, 2018. Dkt. No. 75 at 1.

Defendants contend that the Maleks have used self-help both to delay their depositions and to make it impossible for their depositions to be taken before defendants produce the body camera videos discussed above. Dkt. No. 75 at 3–4. Mr. Malek responds that he could not have known in advance when the discovery stay would be lifted, and that given his position on viewing the body camera videos in advance of his deposition and the length of time remaining to complete discovery in this case, his decision to leave the country for an extended period of time was not intended to thwart defendants' discovery efforts and is not, in fact, prejudicial to those efforts. *Id.* at 4–7.

The fact that discovery does not close in this case until September 27, 2019 is not a good reason for either party to be less than diligent in providing or obtaining discovery. However, while Mr. Malek and his counsel should have been more forthcoming about the Maleks' travel plans once it was clear the discovery stay would be lifted, defendants will not be prejudiced by a several-months delay in obtaining the Maleks' depositions, particularly given that defendants themselves have not completed production of the documents that Mr. Malek might reasonably require before summary judgment briefing could proceed. In addition, the Court will mitigate any prejudice that might otherwise exist with respect to the ordering of witness depositions by permitting defendants to take the Maleks' depositions before Mr. Malek takes defendants' depositions.

The Court understands that the Maleks are due to return to the United States on September 18, 2018 but that the earliest date plaintiff's counsel is available to defend their depositions is mid-October 2018. The depositions of Mr. Malek and his wife should be scheduled to take place at the earliest possible date (taking into account counsels' prior commitments) following their return, but no later than October 26, 2018, unless the parties agree to a later date.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendants shall produce the body camera videos without delay.
2. Mr. and Mrs. Malek must sit for depositions at the earliest possible date following their return to the United States, but no later than **October 26, 2018**, unless the parties agree to a later date.
3. Defendants need not sit for their depositions until after the Maleks' depositions are completed.
4. Apart from the sequencing of depositions in paragraphs 2 and 3 above, neither party shall delay or withhold discovery based on their adversary's production of documents or information, or lack thereof.

**IT IS SO ORDERED.**

Dated: August 23, 2018

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge